489 So.2d 306 (1986)
Robert and Penelope FITZGERALD
v.
GULF INTERNATIONAL CINEMA CORPORATION, d/b/a Plaza Cinemas 4 and CNA Insurance Company.
No. CA-4777.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1986.
*307 Favret, Favret, Demarest & Russo, Anthony J. Russo, Clarence F. Favret, III, New Orleans, for appellees.
James F. Ryan, New Orleans, for appellants.
Before SCHOTT, BYRNES and HUFFT, JJ.
BYRNES, Judge.
This is an appeal from a judgment awarding damages to the plaintiff in a slip and fall incident in a movie theater. We affirm.
In June, 1981, appellee, Penelope Fitzgerald attended a children's matinee at a movie theater owned and operated by appellant Gulf International Cinema Corporation (Gulf Cinema). She was accompanied by her two children and her sister Sylvia Blanchard. Mrs. Fitzgerald claims that as she was walking between the rows of seats, she slipped on some unknown substance and fell to the floor, striking her back against the armrest of the seat behind her.
The Fitzgeralds sued Gulf Cinema, alleging; 1) that the general design and construction of the floor was unreasonably dangerous and; 2) that there was a foreign substance on the floor and that Gulf Cinema's employees failed to take adequate steps to remove the hazard or warn patrons of its presence. Gulf Cinema answered, denying that its employees were negligent, and asserting that the premises were properly cleaned, maintained and inspected.
After hearing the evidence, the trial judge ruled in favor of Mrs. Fitzgerald. In doing so he necessarily made several factual determinations. The first of these involved whether or not a foreign substance was on the floor. Mrs. Fitzgerald and her sister both testified emphatically that there was a greasy, slippery spot in the aisle where Mrs. Fitzgerald fell. Kyle Sherman, assistant manager of the theater, testified he inspected the spot where Mrs. Fitzgerald claimed she fell and found no foreign substance.
Faced with this absolute and irreconcilable conflict in the testimony of the only witnesses who could have had personal knowledge of the issue, the trial judge was forced to make a credibility judgment. He chose to believe the appellant and her sister. Appellate courts should not disturb a trial court's factual conclusions and evaluations of credibility unless they are clearly erroneous. Canter v. Koehring, 283 So.2d 716 (La.1973). Having reviewed the record in this case, we cannot say that the trial court was clearly wrong. We therefore affirm the finding that a foreign substance was present on the floor at the time of the accident.
There was also conflicting testimony concerning whether or not Mrs. Fitzgerald slipped on this substance or stumbled over another patron as she made her way down the aisle. The stumbling theory was put forth by Gulf Cinema's experts and was based entirely on Mrs. Fitzgerald's statement that she reached forward as she fell in an attempt to steady herself. Gulf Cinema argues that this somehow proves that Mrs. Fitzgerald couldn't have slipped. We do not agree.
According to Gulf Cinema's expert if you slip you fall backwards, if you trip or stumble you fall forwards. Be that as it may, we do not find it implausible that Mrs. Fitzgerald reached forward as she fell in an attempt to grab the seat in front of her and prevent her fall. The trial judge clearly believed this to be the case and we see no error in that conclusion. We now examine Gulf Cinema's conduct to determine if it should be liable for Mrs. Fitzgerald's injuries.
The owner of a business establishment must keep the floors and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. Jones v. Recreation and Park Commission, Etc., 395 So.2d 846 (La. App. 1st Cir.1981). Since the owner of a *308 business establishment is not the insurer of the safety of his customers, a breach of this duty must be shown before the storekeeper will be held liable for slip and fall injuries suffered on the premises. Foster v. Wallgreen's Drug Stores Inc., 468 So.2d 656 (La.App. 4th Cir.1985). A prima facie case that a store owner breached this duty is established when the plaintiff shows that he slipped, fell and was injured as a result of a premise hazard. Miller v. Smith, 391 So.2d 1263 (La.App. 1st Cir.1980). A premise hazard has been defined as a condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances. Johnson v. Insurance Company of North America, 360 So.2d 818 (La.1978). Once a plaintiff proves a prima facie case of slip and fall resulting from a premise hazard, the burden of proof shifts to the defendant to exculpate himself from the presumption of negligence which then arises. Brown v. Winn Dixie, 452 So.2d 685 (La.1984).
As previously discussed, the trial court found that an unknown foreign substance was present on the floor of the aisle where Mrs. Fitzgerald was injured and that the injury occurred when she slipped and fell on that substance. Having affirmed these findings, we now address the trial judge's conclusion that Gulf Cinema failed to exculpate itself from the presumption of negligence which arose when Mrs. Fitzgerald established a prima facie case.
The testimony of Gulf Cinema's employees makes it clear that their inspection of the theater was primarily visual and that they did not walk between the rows of seats to inspect the floors. Unlike the center aisle, the aisles between the seats are not carpeted and are thus more likely to become slippery if a foreign substance is allowed to remain there. This, in our opinion makes it necessary for those surfaces to be more thoroughly inspected, particularly because those using the aisles are frequently finding their seats in the dark and cannot see for themselves what might be on the floor. Moreover, the aisles are narrow, further hampering a patron's efforts to view the floor.
Gulf Cinema contends that the cleanup and inspection carried out each night by cleanup crews, combined with the inspection its employees conducted each morning was sufficient to discharge its duty. We disagree. The evidence reveals that while cleanup crews presumably mopped each aisle, the inspection which followed the mopping process did not include checking each aisle to see if it was thoroughly clean and free of foreign substances. In the context of a movie theater, where food is consumed and spilled regularly, this inspection procedure appears inadequate.
As far as can be determined from the record, the only person walking over the aisles between the seats was the cleanup man who mopped the floor each morning. Subsequent inspections were carried out visually from the center aisle and appear to have been directed at detecting debris and not a slippery spot on the floor. Given the extreme likelihood that such spots would occur, we hold that Gulf Cinema did not conduct an adequate inspection of its premises before allowing the public to enter.
We now address the issues of damages and quantum. The trial court awarded Mrs. Fitzgerald $77,182.47 for medical expenses incurred as a result of her fall. Of this amount, the parties agreed that $33,995.33 was attributable to cervical (neck) injuries and $43,187.11 was attributable to lower back injuries. On appeal, Gulf Cinema contends that the trial judge erred by allowing recovery of expenses for cervical injuries because Mrs. Fitzgerald did not establish that those injuries were caused by her fall. As proof of this contention, Gulf Cinema points to the scarcity of documented complaints by Mrs. Fitzgerald to her doctors concerning neck pain. We reject this argument.
Although the question may be a close one, we are of the opinion that the scarcity of complaints was adequately explained by the testimony of Mrs. Fitzgerald and her treating physicians. Dr. Lewellyn, the neurosurgeon who operated on Mrs. Fitzgerald, *309 was asked on cross examination if the scarcity of complaints concerning neck pain would affect his judgment as to whether Mrs. Fitzgerald's cervical problems were related to her fall. He responded by stating that such a circumstance made it more difficult to relate the injury and the fall, but explained that:
... if there were no other history of injury, there are reasons that might account for the late development or a patient not complaining of minor aches and pains in one area of the spine when they're having such a severe problem or serious problem with another area of the spine. These symptoms might be masked by medication; might be masked by rest or use of moist heat, hot baths. And the patient not have significant problems for months after an injury.
When asked if he had ever encountered a case where it took two years for symptoms to develop, he replied:
Not frequent[ly] and not often, It usually takes a disc from six to nine to twelve months to really develop. The more common development of the disc problem can take that, usually takes that length of time from the initiating injury. Even a severe one. Certainly more milder injuries that eventually end up as presenting with full disc problems can take a year and a half or two years, but they do have some symptoms during that period of time. Those mild symptoms can be masked if the person is in a case or bed rest or day by day medication or taking multiple moist heat applications and not being active physically. These minor symptoms can be masked in a person and this has been my experience. Not often, but it has occurred.
Dr. Lewellyn ultimately concluded that Mrs. Fitzgerald's cervical problems were caused by her fall notwithstanding the lack of documented complaints. Dr. Elmorshidy, Mrs. Fitzgerald's orthopedist, also testified that this was possible, although he stated that he did not remember Mrs. Fitzgerald ever complaining of neck pain.
Mrs. Fitzgerald testified that she did complain to Dr. Elmorshidy but was told she worried too much and to put it out of her mind. She further testified that this apparent lack of concern over her neck pain eventually caused her to consult Dr. Lewellyn. Moreover, Mrs. Fitzgerald's family physician, Dr. Gehbauer, testified that when she consulted him soon after the accident, she complained of neck and back pain. These complaints led Dr. Gehbauer to refer Mrs. Fitzgerald to Dr. Elmorshidy. In addition, Sylvia Blanchard testified that Fitzgerald complained of neck pain immediately after her fall.
Taken as a whole, this testimony was sufficient to establish a causal link between Mrs. Fitzgerald's accident and her cervical problems. We therefore affirm the trial judge's award of medical expenses.
In addition to medical expenses, the trial judge awarded Mrs. Fitzgerald $275,000.00 in general damages, $17,382.00 in lost wages and $90,000.00 for loss of earning capacity. Neither Gulf Cinema or Mrs. Fitzgerald has complained about the award for lost wages and we will therefore leave that award undisturbed. Gulf Cinema contests the remaining awards. Mrs. Fitzgerald has answered the appeal seeking an increase in the amount awarded for general damages and loss of earning capacity.
We first address the general damages award. In assessing damages, much discretion is left to the trial court. La.C.C. Art. 1999; (formerly Art. 1934(3)). Before an appellate court may disturb such an award, it must first analyze the facts of the case to determine if there has been an abuse of the lower court's "much" discretion. Once an award is found to be insufficient or excessive, courts may examine comparable cases for guidance in determining an appropriate award. Reck v. Stevens, 373 So.2d 498 (La.1979). Even then, an appellate court can only raise (or lower) the award to the highest (or lowest) point which was within the lower court's discretion. Coco v. Winston Industries, 341 So.2d 332 (La.1977).
*310 Applying this analysis to the present case, we find no abuse of the trial judge's much discretion. His award appears designed to adequately compensate Mrs. Fitzgerald for her injuries. Given the record before us, we cannot say that the trial judge erred in his assessment of this element of damages.
Finally, we address the award of $90,000.00 for loss of earning capacity. The award was based on the judge's conclusion that Mrs. Fitzgerald's injuries would prevent her from realizing her full earning potential as a teacher. Her last experience as a full time teacher was for the Ferncrest School in 1971. Mrs. Fitzgerald spent the next 10 years raising her family and teaching part time as a substitute at Ferncrest.
The record reveals that before the accident, the owner of Ferncrest had asked Mrs. Fitzgerald to be a full time substitute teacher during the 1981-82 school year. The record also reveals that Mrs. Fitzgerald was offered a full time regular teaching position for that same year. Mrs. Fitzgerald was forced to decline both these offers because of her injury.
In Edwards v. Sims, 294 So.2d 611 (La. App. 4th Cir.1974), this court made the following observation concerning the question of lost earning capacity.
At the threshold we observe that an award of damages for loss of future wages or for impairment of earning capacity cannot be calculated with mathematical certainty, but that sound judicial discretion should be exercised after all proper considerations are weighed. McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So.2d 183 (1961). When a judge or jury determines the measure of this item of damages, proper factors to be considered include plaintiff's physical condition prior to the accident, his work record, the amount of his earnings in previous years, and the probability or improbability that he would have earned similar amounts during the remainder of his work life if he had not sustained the pertinent injury. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968).
The court went on to hold that:
The fact that the purchasing power of the dollar has maintained a consistent downward trend in past years is a proper factor for consideration. Jakubec v. Southern Bus Lines, 31 So.2d 282 (La. App. 2nd Cir.1947). Dollars awarded today to compensate a tort victim for partial wages he would otherwise have earned in the future will probably have a decreased purchasing power at the time of the theoretical use in the future. But, again for emphasis, this and other factors are only considerations in the discretionary fixing of an award not determinable with mathematical certainty. (emphasis added)
At the outset, we note that Mrs. Fitzgerald is not a certified teacher. However, under Louisiana law she may still teach in a certified private institution. Gulf Cinema argues that her lack of certification and the fact that Ferncrest School closed in May of 1984 should have precluded an award for loss of earning capacity. We do not agree.
In our opinion, it was established that Mrs. Fitzgerald would have been employed as a full time teacher had it not been for her injury. Whether or not she would have been able to keep this position for the remainder of her projected work life is somewhat less clear given the fact that Ferncrest School is no longer in operation. However, we conclude that it is reasonably certain that among the many private and parochial Schools in the area, Mrs. Fitzgerald would have been able to continue her employment.
Both parties to this suit submitted expert opinions to the court concerning the proper calculation of Mrs. Fitzgerald's loss of future wages. The defendant's expert took a more conservative view than the plaintiff's, both in worklife expectancy and in the discount rate applied to future projected earnings. The trial judge awarded slightly less than the most generous figure put forth by the defendant's (more conservative) expert. Given Mrs. Fitzgerald's somewhat sketchy *311 work history and the limitation which lack of certification would place on her ability to find employment outside of Ferncrest, we cannot say that the trial judge's ruling was an abuse of his "much discretion" under C.C. Art. 1999. (See former Art. 1934(3)).
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.