COCA-COLA BOTTLING COMPANY of Memphis,
Tennessee *v.* Terry PRIDDY

96-657                                    945 S.W.2d 355

Supreme Court of Arkansas
Opinion delivered May 27, 1997

*Friday, Eldredge & Clark*, by: *Donald H. Bacon*, for appellant.

*J.R. Nash*, for appellee.

ANNABELLE CLINTON IMBER, Justice. A jury awarded Terry Priddy $50,000 in damages for an injury negligently inflicted by an employee of Coca-Cola Bottling Company of Memphis, Tennessee (Coca-Cola). On appeal, Coca-Cola argues that the trial court erred when it refused to instruct the jury on Priddy's duty to use ordinary care to mitigate her damages. We affirm the trial court's ruling.

On February 1, 1993, Terry Priddy was shopping at a grocery store when her left ankle and foot were struck by an empty stacking container thrown by one of Coca-Cola's employees. Although Coca-Cola contested liability for Priddy's injuries, it conceded on appeal that the main issue at trial was the amount of damages to which Priddy was entitled.

During the trial, Priddy testified that the blow almost knocked her down, and that her ankle immediately began to swell. Priddy sought medical treatment for her injuries, and a doctor prescribed an anti-inflammatory agent and pain medication. Over the next two and a half years, Priddy saw four different doctors and tried a variety of treatments to eliminate the persistent swelling and pain in her ankle and foot. According to Priddy, none of these treatments alleviated the throbbing pain, and she was unable to stand or walk on her foot for extended periods of time. Thus, Priddy claimed, she was forced to quit her job that required a great deal of walking and take a different job where she could sit for most of the day.

On July 27, 1995, Priddy was referred to Dr. Ruth Thomas, who is an orthopedic surgeon specializing in the treatment of ankles and feet. Dr. Thomas determined that Priddy suffered from sural nerve neuritis. To confirm her diagnosis, Dr. Thomas injected a nerve blocking agent into Priddy's foot. Priddy testified that after receiving the nerve block she no longer felt pain and was able to jog up and down her street. The injection, however, caused Priddy's foot to become numb for twenty-four hours, instead of five hours as predicted by Dr. Thomas.

In August of 1995, Dr. Thomas suggested that Priddy undergo an outpatient surgical procedure where the sural nerve is

cut and inserted into a nearby muscle. Dr. Thomas predicted that immediately after the surgery Priddy would have complete relief from the pain without any additional treatments. Furthermore, after a six-week-healing period, Priddy would be able to return to the activities that she was no longer able to do as a result of her injury. Although the procedure would cause topical numbness on the side, bottom, and heel of Priddy's foot, Dr. Thomas believed that Priddy would retain full mobility of her foot and ankle.

After discussing the surgery with Dr. Thomas, Priddy decided not to undergo the procedure at that time. Priddy explained that, despite Dr. Thomas's assurances, she was afraid her entire foot would become "dead" or useless. In addition, Priddy was skeptical of the surgery because the pain was in her ankle and the top portion of her foot, while the procedure would numb the bottom, side, and heel of her foot. Finally, Priddy testified that she was still considering the surgery, and that she might undergo the procedure in the future if the pain did not subside.

Based on this testimony, Coca-Cola requested that the jury be given the following instruction that is based on AMI Civ. 3d 2214:

> If it becomes necessary for you to assess damages, then in fixing the amount of money which will reasonably and fairly compensate Terry Priddy, you are to consider that an injured person must use ordinary care *to follow the instructions* of her physician, and that any damages resulting from a failure to use such care cannot be recovered.

(Emphasis added.) The trial court refused to give this instruction. Likewise, the trial court refused to give Priddy's proffered instruction on future medical expenses. The trial court did, however, instruct the jury on damages for future pain and suffering and for lost earning capacity.

The jury returned with a general verdict for Priddy and awarded her $50,000 in damages. Coca-Cola filed a motion for a new trial based on the trial court's refusal to give the instruction on Priddy's duty to use ordinary care to mitigate her damages. The trial court denied the motion, and Coca-Cola appeals. For its sole argument on appeal, Coca-Cola asserts that the trial court

committed reversible error when it refused to give AMI Civ. 3d 2214 on Priddy's duty to use ordinary care to mitigate her damages.

## I. Preservation

First, Priddy argues that this issue is not preserved for appeal because Coca-Cola failed to assert below that the verdict was excessive. This argument misconstrues Ark. R. Civ. P. 59(a), and thus we find that it has no merit.

■ Arkansas Rule of Civil Procedure 59(a) provides in relevant part that:

> A new trial may be granted. . .for *any of the following grounds* materially affecting the substantial rights of such party: . . .(4) excessive damages appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small; . . .(8) error of law occurring at the trial and objected to by the party making the application.

(Emphasis added.) A motion for new trial based on Rule 59(a)(4) or (a)(5) challenges the sufficiency of the evidence to support a jury's factual determination of damages. *Kempner v. Schulte*, 318 Ark. 433, 885 S.W.2d 892 (1994); *National Bank of Commerce v. McNeill Trucking Co.*, 309 Ark. 80, 828 S.W.2d 584 (1992). In contrast, a Rule 59(a)(8) motion may be used to determine if it was an error of law to refuse to give a proffered instruction. *See Crowder v. Flippo*, 263 Ark. 433, 565 S.W.2d 138 (1978); *Security Life & Trust Co. v. First Nat'l Bank*, 249 Ark. 572, 460 S.W.2d 94 (1970). As mentioned in the rule, these are separate and distinct grounds for granting a new trial. An appellant is simply not required to raise one argument in order to preserve the other.

On appeal, Coca-Cola only contests the trial court's refusal to give the proffered jury instruction on mitigation; it does not challenge the sufficiency of the evidence to support the amount of damages awarded. Therefore, we find no merit to Priddy's argument that Coca-Cola has not properly preserved the issue for appeal.

## II. Failure to Give AMI Civ. 3d 2214

█ The next issue is whether the trial court committed reversible error when it refused to give AMI Civ. 3d 2214 regarding the plaintiff's duty to use ordinary care to mitigate damages. We have consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction. *Yocum v. State*, 325 Ark. 180, 925 S.W.2d 385 (1996); *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993). Moreover, we will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Barnes, Quinn, Flake & Anderson, Inc. v. Rankins*, 312 Ark. 240, 848 S.W.2d 924 (1993); *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992); *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991).

The relevant inquiry presented by this case is whether there was some evidence that Priddy failed to use ordinary care to follow "the instructions" of her physician as specified in AMI Civ. 3d 2214. During the trial, Dr. Thomas testified as follows:

> ATTORNEY: Is it still up in the air whether she is to go through with the operation?
>
> DR. THOMAS: It could be done at anytime.
>
> ATTORNEY: I mean, as far as her decision, did you invite her to think about it for a period of time?
>
> DR. THOMAS: I certainly did.
>
> * * * *
>
> ATTORNEY: Did you put any deadline on her thinking about what to do?
>
> DR. THOMAS: No, sir, because the procedure would not change. It would be the same procedure a year from now. It's a matter of deciding whether the pain is getting better over that period of time, and whether it's become more tolerable. And if that is so, then I wouldn't consider the surgery. If the pain gets worse, or if it remains at the same level and it's felt to be intolerable, then that's a surgical option that can be done.

ATTORNEY: So it's really up to her whether she wants to risk—

DR. THOMAS: That's correct.

ATTORNEY: —the surgery, or to just try to put up with the pain?

DR. THOMAS: That's correct.

\* \* \* \*

ATTORNEY: Can you say with a reasonable degree of medical certainty that the surgery you have suggested is necessary?

DR. THOMAS: I don't consider it necessary unless the patient feels that her pain is not controlled. If she feels it's intolerable, then I think it's an option. I don't consider it necessary.

Based on these facts, we agree with the trial court that there was no evidence that Priddy was ever given "instructions" by Dr. Thomas as required by AMI Civ. 3d 2214. Instead, it appears that Dr. Thomas merely gave Priddy the option to have the surgery when and if the pain became so severe that the benefits of the surgery outweighed the possible negative side effects. Additionally, Dr. Thomas refused to characterize the surgery as "necessary." Thus, we find that the trial court did not abuse its discretion when it concluded that there was not enough evidence in this case to support the giving of AMI Civ. 3d 2214.

Affirmed.