Carl RODGERS and Norlene Rodgers *v.*
CWR CONSTRUCTION, INC.

00-655 33 S.W.3d 506

Supreme Court of Arkansas
Opinion delivered December 14, 2000
[Petition for rehearing denied January 18, 2001.* ]

---

\* HANNAH, J., not participating.

*Boswell, Tucker & Brewster*, by: *Dennis J. Davis*, for appellants.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Scott D. Provencher*, for appellee.

W<small>H</small>. "D<small>UB</small>" A<small>RNOLD</small>, Chief Justice. The Court of Appeals certified this personal-injury case to us as a

subsequent appeal following two appeals previously decided in this court. *See Richardson v. Rodgers*, 334 Ark. 606, 976 S.W.2d 941 (1998); and *Richardson v. Rodgers*, 319 Ark. 402, 947 S.W.2d 778 (1997). Our jurisdiction is authorized pursuant to Ark. R. Sup. Ct. 1-2(a)(7) (2000). Appellant Carl Rodgers, an employee of I-K Electric, a subcontractor of appellee CWR Construction, was injured in a construction-site accident at the Pulaski County Courthouse on May 24, 1994. While Rodgers was pulling feeder wires out of an electrical panel in the basement, a ten- to twelve-foot long, ten-inch diameter section of water pipe, suspended from the ceiling by a c-clamp attached to an all-thread rod, fell and struck him. Rodgers subsequently filed a complaint in White County Circuit Court against appellee seeking compensatory and punitive damages for his alleged injuries, including cervical neck strain, multiple herniated disks, right-upper-extremity radiculopathy, right ankle sprain, post-traumatic headache syndrome, and impotency. Rodgers's wife, Norlene Rodgers, also claimed damages for loss of consortium and for punitive damages.

It is undisputed that appellant was not wearing a hard hat at the time of the accident. As a result, appellee raised Rodgers's nonuse of the safety device as an affirmative defense of comparative fault. Appellants objected to the introduction of any such evidence at trial. However, the trial court permitted the introduction of evidence that Rodgers was not wearing a hard hat, as required by I-K Electric's and appellee's policies as well as OSHA safety regulations. In reaching its decision, the trial court relied, in part, upon appellee's claim that Dr. Terrence Yates, Rodgers's treating physician following the accident, would testify that a hard hat would have made a difference regarding the laceration on Rodgers's head and would have made some difference in the nature and extent of his other injuries. Ultimately, no such evidence was elicited at trial. In any event, the trial court declined to submit either of two proffered curative instructions to the jury.

The parties also agreed that appellee lost the clamp and bolt that held the offending water pipe to the ceiling prior to the accident and that appellee never received copies of a safety report prepared by appellee. In response to appellants' request that the jury be instructed regarding spoliation of evidence, the trial court rejected a non-AMI jury instruction. The trial court noted that the clamp, bolt, and safety report were available at the time appellants'

lawsuit was initiated. Further, the trial court determined that appellants presented no proof that appellee willfully lost or intentionally destroyed the evidence.

During the four-day trial held on November 2, 3, 4, and 5, 1999, appellants also objected to certain testimony by Dr. Stephen Cathey, a neurological surgeon. Dr. Cathey conducted a surgical consultation with Rodgers including clinical examinations and diagnostic studies to determine if he would benefit from having a surgical procedure to relieve stenosis and provide room for Rodgers's spinal cord. Ultimately, Dr. Cathey concluded that surgery was unwarranted and observed that Rodgers had returned to pre-injury status. He also opined that appellant's current disability related to pre-existing injuries rather than the May 1994 incident. In other words, Dr. Cathey surmised that the accident aggravated Rodgers's underlying neck problems.

Over appellants' objection, Dr. Cathey proceeded to testify regarding the issue of secondary-gain motivation, (i.e., a behavior that is rewarded). For example, in a personal-injury case, Dr. Cathey explained that the secondary gain is the promise of a financial settlement or award that may come after an industrial accident. However, when cross-examined, Dr. Cathey admitted that he was not giving testimony that it was his opinion that any secondary gain was involved in the instant case. In light of the doctor's admission, appellants objected to the introduction of any evidence regarding secondary-gain motivation because (1) Dr. Cathey could not say that Rodgers had secondary-gain motivation within a reasonable degree of medical certainty, and (2) the danger of unfair prejudice outweighed any probative value. The trial court disagreed and allowed the testimony.

On appeal, appellants contend that the trial court erred on five bases: (1) by admitting evidence regarding Rodgers's failure to wear a hard hat; (2) by failing to instruct the jury to disregard that evidence when appellee failed to meet its burden of proof on the affirmative defense of comparative fault; (3) by excluding the testimony of M.I. Starns, appellants' witness who was prepared to testify that the failure to wear a hard hat did not contribute to the severity of Rodgers's injuries; (4) by failing to give an instruction on the spoliation of evidence; and (5) by admitting Dr. Cathey's testimony regarding secondary-gain motivation. We find merit in appellants'

fifth point and reverse and remand for further proceedings consistent with this opinion.

## I. Issues regarding the hard hat

### A. Admission of evidence of nonuse

Appellants' first point on appeal contests the trial court's decision to admit evidence that Rodgers was not wearing his hard hat at the time of the accident. Appellants moved *in limine* to exclude any evidence of nonuse of the safety device but, based upon appellee's assertions that Dr. Yates would testify that wearing a hard hat would have made some difference in connection with at least the nature and extent of appellant's injuries, the trial court denied the motion. At trial, however, Dr. Yates testified that, in his opinion, a hard hat would not have made any difference with regard to the spinal injury and may have made some difference in connection with the laceration.

■ ■ At the time of the pretrial hearing on appellants' motion *in limine*, the trial court had a reasonable expectation that relevant evidence would be forthcoming at trial. Moreover, the decision to admit evidence is within the trial court's discretion. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of that discretion nor will we reverse absent a showing of prejudice. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996), *cert. denied*, 117 S. Ct. 246 (1996). Here, we cannot say that the trial court erred by admitting the evidence when appellee claimed that relevant testimony would be presented at trial and when appellant's employer, appellee, and OSHA regulations required the use of a hard hat on the job site.

### B. Failure to submit limiting instruction

Appellants' second issue on appeal challenges the trial court's refusal to submit a curative instruction to the jury cautioning it to disregard any evidence of Rodgers's failure to wear a hard hat as evidence of comparative fault. Notably, a review of the record demonstrates that appellee failed to present any evidence that the hard hat would have made any difference in diminishing appellant's spinal injuries. In fact, the trial court expressly acknowledged that there was no evidence that the hard hat would have prevented any

spinal injury. In contrast to what appellee predicted, Dr. Yates testified within a reasonable degree of medical certainty that a hard hat would not have made a significant, or even small, difference with regard to Rodgers's injuries. Indeed, the only evidence that the hard hat would have made any difference was with respect to appellant's laceration.

However, the trial court denied appellants' motion to offer the jury one of two limiting instructions. The first proffered instruction cautioned the jury to disregard Rodgers's failure to wear a hard hat "[w]hen determining whether any negligence on the part of Carl Rodgers was a proximate cause for any damages." The second instruction stated that the jury could consider the evidence only "with regard to the issue of what damages, if any, Carl Rodgers is entitled to for the laceration to his head."

■■ Appellants correctly argue that appellee bears the burden of proof for establishing its affirmative defense of comparative fault. *See Baumgartner v. Rogers*, 233 Ark. 387, 345 S.W.2d 476 (1961); *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993). Appellee must prove that Rodgers's failure to wear a hard hat was a proximate cause of any of his injuries, and we require the jury to base its decision upon proof, not mere speculation or conjecture. *See Cates v. Brown*, 278 Ark. 242, 247, 654 S.W.2d 658, 661 (1983). At best, appellee offered evidence that the hard hat may have made *some* difference with respect to the laceration injury. Other evidence indicated that a hard hat was required on the job site. Although the proof offered at trial may have warranted a limiting instruction, we cannot say that the trial court erred by refusing to submit either of the two proffered instructions. The first instruction is not supported by the evidence presented at trial, and the second contains an improper comment upon the evidence. Accordingly, we affirm the trial court on this point.

## C. Exclusion of testimony of M.I. Starns

For their next point on appeal, appellants contend that the trial court abused its discretion by excluding testimony from M.I. Starns, appellants' expert witness who was prepared to testify that the hard hat would not have diminished the severity of Rodgers's injuries. Starns claimed that he had done extensive hard-hat research over the past fifteen years for OSHA, ANSI, and industrial firms. He also

reported testifying in other hard-hat lawsuits when expert testimony was needed to corroborate the lack or severity of injuries. In Starns's opinion, given the manner in which the pipe knocked appellant down, Rodgers would sill have sustained his injuries with or without a hard hat.

■ In response, appellee claims that Starns is no "expert." Starns never spoke with Rodgers, never investigated the job site, is not a licensed engineer or medical doctor, and does not hold a four-year degree from any institution, despite his past claims to the contrary. Moreover, the determination of an expert's qualifications is a matter within the trial court's discretion. *First Commercial Trust Co. v. Rank*, 323 Ark. 390, 915 S.W.2d 390 (1996).

Appellants counter that this court has been liberal concerning expert's qualifications and ability to testify. *See* Ark. R. Evid. 702; *Dildine v. Clark Equip. Co.*, 282 Ark. 130, 666 S.W.2d 692 (194). In *Dildine*, we cautioned that "too rigid a standard should be avoided, and if some reasonable basis exists from which it can be said the witness has knowledge of the subject, his evidence is admissible." *Id.* Adopting this reasoning, appellants suggest that the relative weakness or strength of Starns's testimony should be a matter of weight and credibility for the jury rather than admissibility. Under the instant facts, we disagree.

■ In light of our standard of review, we decline to overturn the trial court's decision to disallow Starns's testimony. In any event, Starns's testimony was merely cumulative because Dr. Yates, a qualified expert, testified that the failure to wear a hard hat would not have made a difference in Rodgers's spinal injuries. Accordingly, we find no basis for finding that the trial court abused its discretion in excluding M.I. Starns's testimony.

*II. Failure to submit spoliation instruction*

■ Appellants claim that the trial court erred by failing to give the jury an instruction on the spoliation of evidence. Spoliation is defined as "the intentional destruction of evidence and when it is established, [the] fact finder may draw [an] inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation." *Goff v. Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 146, 27 S.W.3d 387, 388 (2000) (citing*Black's Law Dictionary* 1401 (6th

ed. 1990)). Appellants insist that the record clearly reveals that the appellee was in physical possession and control of the pipe, clamp, and bolt involved in the accident and of certain pre-demolition safety reports. Unquestionably, the clamp, bolt, and safety report were important pieces of evidence. Because the evidence was subsequently lost or not received, appellants asked the court to instruct the jury as follows:

> Where some instrument, which is a part of the material evidence of the case, has been destroyed or lost, the presumption arises that if it had been produced, it would have been against the interest of the party destroying or losing it.

or:

> If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer the evidence is unfavorable to the party who could have produced it and did not. ·

Appellee argued that the instructions had no foundation in Arkansas authority and no evidence indicated that appellee acted intentionally. As a result, appellee suggested that appellants' reliance on cited authority was misplaced. *See, e.g., Middleton v. Middleton,* 188 Ark. 1022, 68 S.W.2d 1003 (1934). We agree, and we affirm the trial court's decision rejecting appellants' spoliation instructions.

■ First, the trial court specifically found that the evidence was not intentionally lost or destroyed. Second, the trial court permitted counsel to argue the same points to the jury event though it elected not to submit the instructions. Third, and most importantly, the evidence was available in appellee's office shortly after the accident, but no meaningful discovery commenced until five years following the accident. In the absence of any intentional misconduct, we cannot say that the trial court abused its discretion by failing to give the jury an instruction on spoliation of evidence.

### III. Admission of secondary-gain expert testimony

Appellants' final point on appeal is that the trial court erred by allowing Dr. Stephen Cathey to testify regarding secondary-gain motivation. They claim that the highly prejudicial testimony significantly outweighed any slight probative value. We find merit in

appellants' argument, and we reverse and remand on this issue. Dr. Cathey explained the concept of secondary-gain motivation to the jury at some length and implied that plaintiffs in personal-injury cases may exaggerate their symptoms in order to receive some financial benefit. In fact, Dr. Cathey opined that in those situations, doctors "frequently see secondary gain." He also commented that a lack of objective findings, as Dr. Cathey had observed in Rodgers's case, enters into the possibility of diagnosing someone with secondary gain.

 Significantly, Dr. Cathey affirmed during cross-examination that he was not testifying that he believed that appellant was malingering or implying that Rodgers had secondary gain involved in this case. Dr. Cathey unequivocally stated that he was not giving testimony that it was his opinion that there was any secondary gain involved in appellant's case. As a result, we must agree with appellants that the testimony was irrelevant, particularly when Dr. Cathey was unprepared to state that it was a relevant issue in Rodgers's case. Ark. R. Evid. 401 defines relevant evidence as "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Given Dr. Cathey's admission, we conclude that the testimony should have been excluded pursuant to Ark. R. Evid. 402, which states that evidence that is not relevant is not admissible.

 Further, even if the evidence had some slight relevance, the testimony should have been excluded per Ark. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. The jury could easily have concluded that secondary-gain issues were relevant to the case. In light of the foregoing, we hold that the trial court abused its discretion by admitting Dr. Cathey's expert testimony regarding secondary-gain motivation.

Reversed and remanded.

IMBER, J., not participating.