Judi TOMLIN *v.* WAL-MART STORES, INC.

CA 02-147 100 S.W.3d 57

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 12, 2003
[Petition for rehearing denied April 16, 2003.]

*McMath Woods P.A.*, by: *J. Bruce McMath* and *Charles D. Harrison*, for appellant.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *Thomas G. Williams*, for appellee.

S AM BIRD, Judge. In this slip-and-fall case, Judi Tomlin filed a negligence complaint against Wal-Mart Stores, Inc., regarding the presence of a strapping band in the aisle of a Wal-Mart store at Camp Robinson. The case proceeded to trial, and the jury returned a verdict against Wal-Mart in the amount of $51,500. The trial court subsequently granted a motion by Wal-Mart for judgment notwithstanding the verdict. Ms. Tomlin raises two points of appeal, contending that the trial court erred in granting the motion for judgment notwithstanding the verdict and in refusing to instruct the jury on spoliation of evidence. For the reasons discussed hereunder, we affirm.

We briefly set forth the facts of the case. In the late afternoon of January 22, 1998, Ms. Tomlin entered the Camp Robinson store to return merchandise at the customer service desk. She tripped and fell in the aisle after completing her transaction, and assistant manager Mike Wasson was called to the front of the store where the accident occurred. His incident report stated that Ms. Tomlin slipped and fell because her foot "caught on a plastic string," and that she bruised her knee. Ms. Tomlin received medical treatment and eventually underwent knee surgery.

*1. Whether the trial court erred in granting Wal-Mart's motion for judgment notwithstanding the verdict.*

■ A trial court may grant a motion for judgment notwithstanding the verdict only if there is no substantial evidence to support the jury verdict and the moving party is entitled to judgment as a matter of law. *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001). Substantial evidence is evidence of sufficient force and character that it will compel a conclusion one way or another; it must force the mind beyond mere suspicion or conjecture. *Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999). On appeal we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the party against whom the judgment notwithstanding the verdict was rendered. *Id.* Possible causes of a fall, as opposed to probable causes, do not constitute substantial evidence of negligence. *Safeway Stores, Inc. v. Willmon*, 289 Ark. 14, 709 S.W.2d 623 (1986).

Mike Wasson, the store's assistant manager on the date in question, testified that Ruth Doyle called him to the front of the store and told him that someone claimed to have fallen. He testified that he could remember only that the fall was supposedly caused by a clear plastic strapping band, about an eighth of an inch thick; that he thought the strapping band was found in the vestibule; and that he did not remember picking it up. He stated that Ms. Doyle "might have showed it, held it out there"; that he was uncertain about the location, Ms. Doyle's holding the band, and whether the band was broken or was a hoop.

Mr. Wasson further testified that inventory for Wal-Mart is sometimes delivered with strapping bands around multiple items of the same product, that the bands were of "the same type of material that I saw," that personnel ordinarily removed the bands before putting products on shelves or unboxing them, and that he could not remember a product being displayed with strapping bands on it. He said that he had no idea how the strapping band in question came to be on the floor, but that it might have been blown in from outside or have been tracked in on someone's shoe. He said that the strapping was also used inside of packages, that he

had seen customers open packages before leaving the store, that he had seen customers return merchandise with packages ripped open and packing material out, and that a customer could drop packaging on the floor and never know it.

Judi Tomlin testified that her fall occurred near the exit doors, in an area near the service desk and check-out counter. She said that she felt a narrow article across her foot— an item like a strapping band or wire. She said that Wasson also tripped when he came around the end of the counter, that he bent down and picked up a white or clear plastic strapping band, and that he threw it into the trash. She remembered commenting at the time, "That's what I tripped on." She testified that she had shopped at Wal-Mart for years, that she had seen packages with strapping bands toward the back of the store but not in the front, and that she had never seen a customer wrestling a band off of a package on display. She testified that there were no return registers set up at the time of her fall, and that customers were lined up at the service desk within a foot or two of the location of the strapping band.

Roger Doyle testified that he was a former assistant manager at the Camp Robinson store. He testified that he frequently had seen customers come in the store's exit door in January when a lot of returns were being made to "return registers" one through four, and he opined that it was an "above average" possibility that the strapping band in question had been dropped by a customer rather than by store personnel. Mr. Doyle testified that the store was constantly being restocked, that employees removed big boxes from boxes with strapping bands on them, and that the majority of stocking took place between 5:00 a.m. and 3:00 p.m.

Mr. Doyle further testified that magazines and other goods with strapping bands on them were brought into the store; and that vendors had to remove the bands, which were usually clear or white. He said that magazines' bands were cut in the back of the store in receiving. He said that vendors cleaned up after themselves, that managers were supposed to check the area as well, that the service desk was responsible for making sure that nothing ended up on the floor, and that personnel were trained to pick up

items lying in the main exit aisle. He said that customers sometimes removed strapping bands from large boxes. He testified that items packaged in large boxes were located in sporting goods, which was about ten aisles from the center and at the back of the store; in lawn and garden, all the way to the right from front checkout; where the safes were sold, about five aisles from the front of the store; and in housewares, approximately two aisles past the safes.

The principles that govern slip-and-fall cases are set against the general backdrop that an owner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees. *Fayetteville Diagnostic Clinic v. Turner, supra.* To establish a violation of that duty, a plaintiff must prove either that the presence of a substance upon the floor was the result of the defendant's negligence, or that the substance had been on the floor for such a length of time that the defendant knew or reasonably should have known of its presence and failed to use ordinary care to remove it. *Id.* The mere fact that a person slips and falls does not give rise to an inference of negligence. *Id.*

In *Wal-Mart Stores v. Kelton,* 305 Ark. 173, 806 S.W.2d 373 (1991), the supreme court held that there was substantial evidence from which the jury could readily infer that water had collected inside the building on the floor for an undue period of time, and that failure to warn of its presence or to wipe the floor clean constituted a breach of ordinary care. The court noted testimony that the day in question was rainy, that a ceiling tile was missing and that water had dripped onto someone's face, that there was water on the store's floor between the counter and the exit door, that employees entered through the exit door, and that there were foot tracks through the water.

In *Bank of Malvern v. Dunklin,* 307 Ark. 127, 817 S.W.2d 873 (1991), the plaintiff slipped and fell when she entered the bank a few minutes after it opened on a rainy morning. The plaintiff testified that she did not see the substance that caused her fall but believed it was accumulated water from the clothes or shoes of a customer or employee. The supreme court held that this evidence was speculative and insufficient to show that the substance was on

the floor due to the Bank's negligence, and that the evidence was also found to be insufficient to establish that a substance had been on the lobby floor for such a substantial period that employees knew or should have known of its existence. The case was distinguished from *Wal-mart Stores, Inc. v. Kelton, supra,* in that the few minutes' time in which the Bank of Malvern had been opened left very little time to notice water possibly brought in by customers or employees, there was no evidence of foot tracks indicating that employees had walked through the water and ignored the danger, and there was no evidence of a leak in the ceiling.

In *Fayetteville Diagnostic Clinic v. Turner, supra,* the supreme court affirmed the trial court's denial of the clinic's motion for judgment notwithstanding the verdict. In that case the plaintiff slipped and fell in water in the hallway of the clinic where she had an appointment. She testified that her doctor there told her afterwards that he was aware of the slippery condition in the area where she fell. The *Turner* court held that this was substantial testimony from which the jury reasonably could have inferred that the doctor, as one of the owners of the clinic, was aware of the condition that caused the plaintiff's fall, that the slippery condition had existed for such a length of time that the owner knew of its presence, and that he failed to take ordinary care to correct it.

*Wal-Mart Stores, Inc. v. Regions Bank Trust Dept.,* 347 Ark. 826, 69 S.W.3d 20 (2002) (in which the trial court was reversed on other grounds), was another case in which the supreme court found the evidence sufficient to sustain a jury verdict in a negligence suit against Wal-Mart. The plaintiff in that case slipped and fell on the store's floor where a puddle of liquid apparently had come from a broken snow globe in a Christmas display. The supreme court found that there was sufficient evidence that Wal-Mart knew or should have known of the presence of the substance on the floor. The evidence included testimony of another shopper who saw the plaintiff fall and minutes earlier had noticed a "puddle of stuff" having a "milky color like when wax gets wet and then it starts to dry"; based on her experience working in hotels, she opined that the discoloration indicated that the liquid had been on the floor for some time. The supreme court also noted the expert testimony of a chemist that the substance inside

the snow globe was primarily water with some dissolved solids, and that it would take at least twenty-four hours for the liquid to even begin to dry; and the concession of a Wal-Mart employee that the liquid may have been on the floor for up to a day.

In *Safeway Stores, Inc. v. Willmon, supra,* where the plaintiff slipped on a liquid substance and fell while pushing a shopping cart down an aisle, witnesses said that the water might have been brought from the water fountain, that someone could have spilled a soft- drink cup filled with ice, and that jugs of distilled water were shelved nearby. The supreme court held that there was only sheer speculation and rank conjecture that the water was on the floor as a result of negligence, and held that the trial court erred in submitting the issue of negligence to the jury. Similarly, where the evidence showed that the aisle had been swept an hour and fifteen minutes before the fall and that employees had been up and down the aisle in the intervening time until the fall, there was no proof that the water had been on the floor for such a length of time that the storekeeper knew, or should have known of its presence and failed to use ordinary care to remove it.

In the present case, the evidence viewed in the light most favorable to the jury's verdict is as follows. Strapping bands were brought into the store on a wide variety of products, and employees handled the strapping bands daily in the receiving and stocking of merchandise. Ms. Tomlin felt a narrow band across her foot when she fell after returning merchandise at the customer service desk, and when shown the strapping tape immediately afterwards she said, "That's what I tripped on." Magazines were sold near the area where Ms. Tomlin fell, magazines were brought into the store in bundles bound with strapping bands similar to the one she described, and nearly all products that were displayed with strapping bands intact were located some distance from the customer service desk and the main exit. The store manager at the time of Ms. Tomlin's fall could not remember a product being displayed with the strapping bands on it. Managers were responsible for insuring that areas restocked by outside vendors were safe for shoppers, and strapping bands returned with return merchandise were the responsibility of store employees. Ms. Tomlin had

shopped at Wal-Mart for years and had never seen a customer remove a strapping band from a package on display.

■ Ms. Tomlin's complaint alleged that negligence by Wal-Mart or its employees resulted in the presence of the strapping band on the floor, or that Wal-Mart had been negligent in failing to remove the band from the floor within a reasonable period of time and had failed to act reasonably to ensure that foreign objects did not remain on the floor so as to pose a danger to customers. We hold that the evidence was insufficient to prove these allegations. Although several possibilities were presented, there was no testimony or other evidence from which the jury could have determined without speculation or conjecture how the strapping band came to be on the floor or how long it remained there prior to the accident. Thus, we hold that the trial court did not err in granting Wal-Mart's motion for judgment notwithstanding the verdict.

The dissenting opinion suggests that there was "an abundance of circumstantial evidence" from which Wal-Mart's negligence could properly be inferred, such as proof that Wal-Mart employees are responsible for removing the strapping bands from shipments of merchandise, and that the bands are not generally accessible to the public. While it is true that negligence·can be inferred from circumstantial evidence, the examples of circumstantial evidence mentioned in the dissenting opinion offer no clue, absent speculation and conjecture, as to how the strapping band upon which Ms. Tomlin tripped migrated from the merchandise or warehouse area of the store, where the evidence established that the straps were removed, and came to be located near the service desk where Ms. Tomlin fell, or how long the strap had been there. There was no evidence presented from which a jury could infer that such migration resulted from the negligence of Wal-Mart or its employees.

*2. Whether the trial court erred in refusing to instruct the jury on spoliation of evidence.*

■ Spoliation is the intentional destruction of evidence; when it is established, the fact-finder may draw an infer-

ence that the evidence destroyed was unfavorable to the party responsible for its spoliation. *Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 27 S.W.3d 387 (2000), *citing Black's Law Dictionary* 1401 (6th ed. 1990). An aggrieved party can request that a jury be instructed to draw a negative inference against the spoliator. *Id.*

At trial, Ms. Tomlin requested that the jury be given a spoliation instruction regarding both the strapping band that was thrown into the trash and any video surveillance tapes of events at issue. She contends that the strapping tape may have reflected partial shoe prints and may have been discolored, which evidence the jury could have used to find that the band belonged to Wal-Mart and that it had been on the floor for a long time. She also contends that surveillance tapes may have shown that a Wal-Mart employee dropped the strapping band, or that the band had lain on the floor for an unreasonably long period of time.

Ms. Tomlin contends that without access to evidence within the control of the proprietor, it is nearly impossible under Arkansas law for an injured party to prove negligence in slip-and-fall cases; therefore, she contends that it is imperative that property owners suffer sanction for destroying pieces of evidence critical to the plaintiff's case. She notes that other jurisdictions have shifted the burden of proof in slip-and-fall cases, specifically requiring a premises owner to overcome a presumption of negligence once the plaintiff establishes a prima facie case by showing that a foreign substance was present, that the fall was on account of that substance, and that he was injured as a result of the fall.[1] Ms. Tomlin argues that Wal-Mart directs its managers on what items to save according to its own pecuniary and best interest. She notes that although Mike Wasson was required to report whether the injured person commented about suing or about medical bills, he was not instructed to preserve the foreign object involved. Regarding the strapping band, she points to testimony by Roger Doyle that items involved in customer incidents are likely to be thrown away rather than taken as evidence, that Wal-Mart's policy is to preserve such

---

[1] Appellant relies in part upon *Fitzgerald v. Gulf Intern. Cinema Corp.*, 489 So.2d 306 (La. Ct. App. 1986), and *Simoneaux v. Humedicenters, Inc.*, 642 So.2d 318 (La. Ct. App. 1994).

objects only in a products liability case, and that discarding the strapping band was not contrary to any policy of Wal-Mart. Regarding the surveillance tapes, she notes Mr. Doyle's testimony that the entrance, exit, and service desk were always under surveillance or within a camera's view; that tapes were changed out and stored each morning; that the tapes were held from two weeks up to thirty days before being reused, but Mr. Doyle had taken tapes out of the rotation and secured them only in instances of internal theft; and that in the case of a customer accident, Wal-Mart had no policy of checking and securing a tape to see if the accident had been recorded.

The trial court, speaking from the bench, set forth it's reasons for refusing to give the spoliation instruction on the strapping band:

> [T]he idea is that if the defendant does some spoiling or losing or intentionally discarding evidence in the case, there ought to be some inference that it was bad evidence. I think it doesn't reach that point in this case. . . . It didn't reach that level to me that Wal-Mart had this policy, or even in this case, that they had intentionally destroyed evidence. She wasn't even sure that was what she had stepped on.

Regarding the surveillance tapes, the court stated, "They did that in a routine manner. There has been no evidence that they went in and erased the tape. They said they do that routinely, keeping them two weeks to a month."

In *Rodgers v. C.W.R. Construction, Inc.*, 343 Ark. 126, 33 S.W.3d 506 (2000), the plaintiffs requested a spoliation instruction regarding evidence that was lost or had never been received; they insisted that the record clearly revealed that the appellee physically possessed and controlled certain pre-demolition safety reports and a pipe, clamp, and bolt involved in the accident at issue. Although viewing these pieces of evidence as unquestionably important, the supreme court held that the trial court's refusal to give the instructions was not error for the following reasons:

> First, the trial court specifically found that the evidence was not intentionally lost or destroyed. Second, the trial court permitted counsel to argue the same points to the jury even though it

elected not to submit the instructions. Third, and most importantly, the evidence was available in appellee's office shortly after the accident, but no meaningful discovery commenced until five years following the accident. In the absence of any intentional misconduct, we cannot say that the trial court abused its discretion by failing to give the jury an instruction on spoliation of evidence.

 A party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support the giving of the instruction; moreover, a trial court's refusal to give a proper jury instruction will not be reversed absent an abuse of discretion. *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). Here, the trial court found that there was no indication that the evidence was "bad," that Wal-Mart had destroyed it in other than a routine manner, or even that it was intentionally destroyed. There was no evidence that anyone at Wal-Mart knew that the surveillance tape actually showed the presence of the strapping band on the floor, how it got there, or how long it had been there. Neither was there any indication that the store manager who allegedly disposed of the strapping band knew at the time that it was potentially helpful to the plaintiff. Therefore, we hold that the trial court did not err in refusing to give the spoliation instruction.

Affirmed.

VAUGHT, CRABTREE, and ROAF, JJ., agree.

PITTMAN and HART, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. There are two ways to establish a violation of the owner's duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees. The plaintiff must prove *either* that the presence of a substance upon the floor was the result of the defendant's negligence, *or* that the substance had been on the floor for such a length of time that the defendant knew or reasonably should have known of its presence and failed to use ordinary care to remove it. *Wal-Mart Stores, Inc. v. Regions Bank Trust Dep't*, 347 Ark. 826, 69 S.W.3d 20 (2002). Although the majority recites

this rule, it fails to recognize that it establishes two distinct kinds of slip-and-fall cases.

The first type of case, and the more common of the two, is the type in which an invitee slips on a substance that is not under the exclusive control of the owner of the premises. In such a case there is a very real possibility that the substance was dropped or spilled by a customer, and the owner of the premises will not be deemed liable unless it can be shown that the substance or object remained on the floor for so long that the premises owner knew or should have known of its presence. All of the cases cited by the majority fall into this category. Water is not an instrumentality under the exclusive control of a business owner, particularly on rainy days, and can easily be tracked in by invitees.

Consequently, *Wal- Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991); *Bank of Malvern v. Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991); *Fayetteville Diagnostic Clinic v. Turner*, 344 Ark. 490, 42 S.W.3d 420 (2001); and *Safeway Stores, Inc. v. Willmon*, 289 Ark. 14, 709 S.W.2d 623 (1986), all turn — and properly so — on the length of time the water was on the floor in determining whether the owner of the premises was liable. The same approach was correctly taken in *Wal-Mart Stores, Inc. v. Regions Bank Trust Dep't*, 347 Ark. 826, 69 S.W.3d 20 (2002), where the broken snow-globe had been on display and it was equally accessible to customers and employees.

The majority's reliance on these cases shows beyond dispute that it fails to understand that the case at bar is of the second sort, where the presence of the substance on the floor is itself the direct result of the defendant's negligence. The appellant provided substantial evidence that strapping bands were an instrumentality under Wal-Mart's direct control. It was the responsibility of Wal-Mart's employees to remove these bands before placing merchandise on display. It follows that it was also Wal-Mart's responsibility to safely dispose of these bands so they would not present a hazard to invitees. As the majority notes, apparently without appreciating its import, Wal-Mart's store manager herself admitted that she could not remember a product being displayed with the strapping bands not having been first removed. Appellant testified that she

had shopped at Wal-Mart for years and had never seen a customer remove a strapping band from an item on display. There was evidence that magazines were displayed in the area where appellant fell, and that these magazines were brought into the store by vendors. The testimony that the vendors removed the strapping bands from the magazines does not relieve Wal-Mart from liability because, in stocking the magazine racks, they were acting as Wal-Mart's agents.

Under these circumstances, the length of time that the strapping band was on the floor, or whether it "migrated" from some other location to the spot where appellant fell, are immaterial. Appellant provided evidence to show that its very presence on the floor was more probably than not the direct result of Wal-Mart's negligence, and that is all the law requires in this type of case. *Fayetteville Diagnostic Clinic v. Turner, supra.*

The trial court was wrong to grant Wal-Mart's motion for judgment notwithstanding the verdict. Entry of judgment notwithstanding the verdict is proper only if there is no substantial evidence to support the jury verdict and the moving party is entitled to judgment as a matter of law. *Fayetteville Diagnostic Clinic v. Turner,* 344 Ark. 490, 42 S.W.3d 420 (2001). Although there was no direct evidence in the present case to show that the strapping band appellant slipped on was on the floor because of Wal-Mart's negligence, there was an abundance of circumstantial evidence from which this fact could properly be inferred, including evidence that Wal-Mart employees are responsible for removing these bands from shipments while stocking merchandise, and that such bands are not generally accessible to customers.

Any material fact in issue may be established by circumstantial evidence; the fact that evidence is circumstantial does not render it insubstantial, because the law makes no distinction between direct evidence of a fact and circumstances from which a fact can be inferred. *Muskogee Bridge Co. v. Stansell,* 311 Ark. 113, 842 S.W.2d 15 (1992). Here, Wal-Mart's negligence could properly be inferred on the basis of the extensive evidence offered at trial to show that strapping bands are almost invariably in the control of and removed by Wal-Mart's employees. In contrast, there

is no evidence whatsoever to establish Wal-Mart's alternative hypotheses for the presence of the strapping band on the floor, *e.g.*, that any strapping bands were brought into the store by customers on the day in question, or that any strapping bands happened to blow in the front door from parts unknown. The jury rejected these far-fetched possibilities and made a finding based on substantial evidence, and I believe that it was error to disturb that verdict.

I respectfully dissent.

HART, J., joins in this dissent.