David M. Glover, Judge, concurring. I reluctantly affirm this case. Our standard of review on appeal for the imposition of sanctions is abuse of discretion, Parker v. Perry, 355 Ark. 97, 131 S.W.3d 338 (2003), which is an extremely high threshold to 1^overcome. To hold there was an abuse of discretion, it must be shown the trial court acted thoughtlessly and without due consideration. Roberts v. Wortz, 2017 Ark. App. 349, 525 S.W.3d 485. Here, the record reflects the in-depth hearing conducted by the trial court on the spoliation. Each party was questioned at length. Then, several weeks later, the trial court detailed by letter to the parties its decision. On such a record, I cannot say the tidal court acted thoughtlessly and without due consideration. Through this concurrence, however, I express my grave concern for the breadth of the sanctions levied against appellant Russellville Holdings stemming from destruction of the paper medical records. Spoliation is defined as “the intentional destruction of evidence and when it is established, [the] fact finder may draw [an] inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation.” Rodgers v. CWR Constr., Inc., 343 Ark. 126, 33 S.W.3d 506 (2000) (citing Goff v. Harold Ives Trucking Co., Inc., 342 Ark. 143, 146, 27 S.W.3d 387, 388 (2000) (citing Black’s Law Dictionary 1401 (6th Ed. 1990))). Unlike a number of federal courts, Arkansas courts have never held that there must be a finding of bad faith by the trial court of intentional destruction indicating a desire to suppress the truth before a spoliation instruction can be given. Bunn Builders, Inc., v. Womack, 2011 Ark. 231. The sanctions are many. In Arkansas, sanctions for a spoliation violation cover a wide range of options — from a fíne, to orders providing that the facts in question are conclusively established or refusing to allow certain evidence or defenses to be admitted, to ordering the “striking [of] pleadings or parts thereof." See Arkansas R. Civ. P. 37(b)(2)(C) (emphasis added). AMI jury instruction 106 is also available. Though not chosen as a 11fisanction by the trial court, that instruction states that if a party intentionally destroys, loses, or suppresses evidence with the knowledge it may be material to a pending or potential claim, an inference may be drawn that such evidence would have been unfavorable to that party’s claim or defense. Here, the trial court struck Russellville Holdings’ entire answer as the sanction for shredding the paper medical records. In its order, the trial court found the original medical file was “so important” that “its preservation was essential to a just adjudication of the issues,” that a curative instruction was insufficient “given the importance of the factual dispute in this case surrounding what documents were in the original file,” and that Russellville Holdings’ conduct was “most egregious” so as to require the striking of its answer. It is stringent, clearly, but is a sanction approved under Ark. R. Civ. P. 37(b)(2). There are two factual questions lifting this appeal. The first question centers around whether orders of temporary and permanent guardianship over Peters were present in his paper medical file on his discharge date of December 26, 2013. His children assert the orders were delivered to the hospital and requested to be placed in Peters’s file.[2] |17Russellville Holdings claims the orders were never received. Russellville Holdings offered other less drastic measures such as (i) giving the spoliation instruction; (ii) giving a modified version of the spoliation instruction, making the adverse inference to be drawn from the spoliation instruction an irrebuttable presumption as opposed to only a rebuttable one; or (Hi) precluding Russell-ville Holdings’ witnesses from testifying that the guardianship orders at issue were not delivered to it by appellees. As to the orders themselves, the latter two options would answer the question of whether they were in the file.[3] It would be undisputed the orders were received by Russellville Holdings. Later, Russellville Holdings’ counsel’s concessions of fact at the reconsideration hearing fully resolve the guardianship-identity issue: There’s no dispute in this case that the proposed guardian was contacted by the hospital prior to Mr. Peters’ discharge. There’s no dispute in this case that he came to the hospital. He presented himself to the hospital as the guardian. There’s no dispute that he met with the medical care providers. There’s no dispute that he presented his contention that the patient should not be discharged or that other arrangements should be made. Those facts are in the pleading and I don’t believe that there will be, there may be some back and forth argument, or could have been some backhand forth argument about the discussion that was had, but what will be presented is that the guardian was contacted. He did come to the hospital the day of the discharge. He was advised of the patient’s discharge. The second factual question: whether the written discharge notes of another patient were placed in Peters’s file instead of the written discharge notes for Peters. The trial court referenced only “the original medical file” in its order. However, by then, Russellville Holdings had submitted four similar, though not exact, microfiche copies of Peters’s medical records. One version of Peters’s medical records include another patient’s notes. In a subsequent version, the other patient’s medical notes had been removed and Peters’s medical notes had replaced them. The paper medical notes were handwritten by separate defendant Dr. Thomas Stinnett, who discharged Peters.[4] .Any other discharge notes could not be at issue, as Dr. Stinnett did not write them but dictated them January 14, over a 113week after Peters committed suicide (January 6, 2014), and those notes were not transcribed until January 17. Thus, all discharge records were reported. I repeat. In Arkansas, there does not have to be a bad intent to find spoliation of evidence. However, given the wide range of sanctions — from a jury instruction to the-wholesale striking of an entire answer (which in effect amounts to a default judgment as to liability) — I believe, when assessing a sanction, there must be consideration of how the evidence was spoliated as to each separate count. We have little to no appellate guidance regarding the imposition of sanctions for pre-litigation spoliation of - evidence. The majority acknowledges Arkansas case law on any type of spoliation is sparse. Our rule (Ark. R. Civ. P. 37(b)(2)) contemplates a risk of sanctions for destruction of documents or other evidence after the court has issued an order compelling discovery. In this case, we concede the rule does not expressly address the destruction of relevant documents before litigation has' commenced. With such a lack of direction, I am hopeful that-our supreme court will be asked for review in order to give direction to the bench and bar for spoliation sanctions. . Peters’s counsel narrowed this question by his remarks to the trial court: [W]e are entitled to show what was in that original file in regards to the guardianship orders, and whether we could substantiate our clients’ allegation that they provided those and they were in the file.... [[Image here]] With regard to our case, we are entitled to try and prove, because it is at the heart of our case, that those guardianship orders were in that file on the day of discharge. [[Image here]] [I]t is our allegation in this case that the chart contained those guardianship orders. . Applying the latter two options would have had the effect of Russellville Holdings admitting that it had received the orders. That in turn would have alleviated the main concern surrounding the destruction of the paper medical file. . Peters’s counsel stated: [The other thing] is his actual medical records from the day they let him go, which is the whole point of this case. What is crucially important to prove that one way or another is what was in that file the day he left. [[Image here]] What our lawsuit pertains to is what was in the file when that man walked out the door. The treatment team’s notes are what we are talking about from the day of discharge. Those are gone.