2012 Ark. 223

**LAKE VILLAGE HEALTHCARE CENTER, LLC; Perennial Health Care Management, LLC; and James Santarsiero, Appellants**

v.

**Richard HATCHETT, Jr., Administrator for the Estate of Richard HATCHETT, Deceased, Appellee.**

No. 11–458.

Supreme Court of Arkansas.

May 24, 2012.

Mariam T. Hopkins, David A. Littleton, Anderson, Murphy & Hopkins, L.L.P., Michael Shannon, Quattlebaum, Grooms, Tull & Burrow, P.L.L.C., Little Rock, for Appellants.

David A. Couch, David A. Couch, PLLC, Little Rock, Robert G. Bridewell, Robert G. Bridewell, Attorney, PLC, Lake Village, Brian G. Brooks, Attorney at Law, PLLC, Greenbrier, for Appellee.

KAREN R. BAKER, Justice.

Appellants Lake Village Healthcare Center, LLC (Lake Village Healthcare), Perennial Health Care Management, LLC (Perennial Health Care), and James Santarsiero appeal an order of the Chicot County Circuit Court striking part of appellants' answers as a sanction for discovery violations. Arkansas Rule of Appellate Procedure–Civil 2(a)(4) (2011) provides that an appeal may be taken from an order that strikes out an answer or any part of an answer. As this case presents issues of substantial public interest and significant issues needing clarification or development of the law, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(4), (5) (2011). We affirm.

## I. Procedural History

Arneacia Hatchett filed a nursing-home, abuse-and-neglect complaint on July 14, 2009, as administrator of the Estate of Richard Hatchett, naming appellants as defendants. Appellee Richard Hatchett, Jr., was substituted as administrator after the appeal was lodged. Lake Village Healthcare was sued as the licensee of the nursing home where Richard Hatchett (Hatchett) was a resident, Perennial Health Care as its management company controlling the day-to-day operations, and Santarsiero as the owner of both of the entities and as the controller of how care was delivered to residents such as Hatchett. All appellants were sued for wrongful death, negligence, and breach of fiduciary and confidential duty. Lake Village Healthcare was also sued for medical malpractice and violations of the Residents' Rights Statute. The complaint averred that the actions or inactions of appellants caused Hatchett's death because they were on notice of the deficient-care conditions within the facility, but they instituted a system of maximizing profit at the expense of delivering necessary care. Appellants filed timely answers.

On December 2, 2009, the circuit court issued a scheduling order setting the case for trial for October 18–22, 2010, with all discovery to be completed within fifteen days of trial. On March 16, 2010, appellee propounded discovery, and on April 19, 2010, appellants served their responses and objections. On June 11, 2010, appellee filed a motion to compel, stating that appellants had objected to, not provided a response to, or provided an incomplete response to specific discovery requests. In their response filed on June 29, 2010, appellants stated that they had

served supplemental responses since their original response to discovery. They requested that the court deny the motion to compel regarding the production of emails because (1) it placed an undue burden on appellants, (2) the request entailed hundreds of man hours to produce documents of scant value, and (3) appellants had been required to produce similar email discovery in other cases at a cost of $100,000. Alternatively, appellants requested that the court order cost-shifting to produce the email discovery.

On July 14, 2010, the circuit court held a hearing on the motion to compel, during which appellee's Request for Production No. 26 was discussed. This request became known as the email request and stated, "Please produce all e-mails, electronic reports, electronic communications, electronic media, and documents concerning budget, staffing, labor and supplies related to Lake Village [Healthcare] for the year 2007." The circuit court limited the scope of the email search to December 2006—January 2007. The court ordered compliance within fourteen days. A written order was entered on August 4, 2010; however, it ordered production of all emails sent in 2007.

On August 30, 2010, appellee filed a motion for discovery sanctions asserting that appellants had failed to produce any emails, resulting in appellee canceling the deposition of Santarsiero on two separate occasions. A telephone conference was held on September 13, 2010, where the circuit court stated that it had been generous in reducing the time frame of appellee's discovery request. Appellee informed the court that appellants had produced 56,000 emails from other nursing-home cases on August 5, 2010, and had failed to identify a single witness for trial until appellee filed a motion in limine to exclude appellants' witnesses.

Appellants responded that the emails were produced because they involved the same type of control issues that were at issue in this case. The circuit court stated that the production of unrelated emails from other cases gave the illusion of compliance where there was none. After appellants acknowledged that they did not request an extension of time to comply with the order, the circuit court stated that appellants' lack of good faith was utter and complete, showing no respect for the court's orders and the restraints the court operated under in getting a trial setting.

On September 14, 2010, appellants filed a response to the motion for discovery sanctions. Attached to the motion was an affidavit executed on September 13, 2010, from Will Belke of Virtual Care Providers, Inc. (VCPI). He attested that VCPI provided email hosting and data storage for Perennial Health Care and Lake Village Healthcare. He stated that he was contacted on July 15, 2010, and requested to start the process of gathering relevant data. Belke said that VCPI only had the ability to recover data up to six days and recovery beyond that period would require outsourcing to third parties. He said that to recover data from six days would cost approximately $4,800 and then an outside forensics team, with its own separate charges, would have to mine the data for specific responses to inquiries.

On October 7, 2010, the circuit court entered an order, stating that at the hearing held on July 14, 2010, it materially narrowed the scope of appellee's production request and ordered appellants to produce emails and documents by July 28, 2010. Yet, appellants did not notify the court they were experiencing difficulty in complying with the order until the hearing on September 13, 2010. The order further noted that the discovery was propounded

on March 16, 2010, and witness names were not furnished until September 2010. The order advised that the court was considering sanctioning appellants for failure to comply with discovery and its order by limiting proof on the liability issues.

On October 15, 2010, a telephone conference was held where discovery issues were addressed. Appellants agreed that no emails had been produced. Appellants asserted they had ordered the emails but could not apprise the court when the emails could be produced.

During the hearing, appellants also argued that the written order entered on August 4, 2010, was in conflict with the court's oral ruling. Appellants asserted that the oral ruling required them to produce two months of emails, whereas the written order required twelve months. The court stated that it was unaware that the written order was inconsistent with its oral ruling and did not remember receiving a letter from appellants' counsel concerning the conflict. Additionally, the court questioned why the issue had not been brought to the court's attention during the September telephone conference. After hearing additional arguments of counsel, the court struck part of appellants' answers.[1] Specifically, it struck appellants' responses to the complaint's Residents' Rights claim, negligence claim, and factual averment that appellants' conduct was reckless.

By letter dated October 28, 2010, the circuit court requested additional information from the parties. The court requested appellants to submit any information substantiating counsel's efforts to preserve and ensure the availability of emails requested in discovery. The court stated that the reason for the request was that it struck part of appellants' answers, instead of granting a continuance, because appellants stated that they could not give any assurance as to when the emails could be produced.

On November 9, 2010, appellants filed a motion to reconsider and motion for a continuance. Appellants stated that the court's request for information concerning emails required them to disclose information protected by attorney-client privilege. Appellants stated that they would not waive the privilege. However, they submitted affidavits from Santarsiero and Belke. Santarsiero attested that on July 15, 2010, Perennial Health Care ordered retrieval of email data from VCPI. He stated that although he lacked expertise in computers or data backup, his prior experience was that it was impossible to provide two months' or a year's worth of email data in fourteen days. Belke's affidavit stated that VCPI was contacted on July 15, 2010, regarding retrieval of emails and the search began that same day. Like Santarsiero, he said that it was impossible to provide two months' or a year's worth of email data in fourteen days. Appellants requested the court reconsider its discovery sanction and grant a continuance of the trial to allow them to furnish scheduled progress reports of their compliance efforts.

The circuit court denied the motion on January 18, 2011, stating that it struck part of the answers of all appellants "due to their collective violation of discovery orders and requests." The court stated that it had given appellants the opportunity to support their good-faith claim of compliance and that appellants had responded with an invocation of attorney-client privi-

---

1. In the record, the circuit court states that it struck appellants' answers; however, in fact, it struck part of appellants' answers. On appeal, the parties also refer to the circuit court striking appellants' answers.

lege. The court said that because appellants could not assure the court when the emails would be forthcoming, the appropriate sanction was to strike part of their answers. Appellants filed their notice of appeal on February 15, 2011.

Appellants' brief raises three main points with several subpoints. However, the actual questions posed are (1) whether the circuit court abused its discretion in striking part of their answers for violation of discovery rules and orders; (2) whether the circuit court abused its discretion in denying their motion to recuse; and (3) whether the circuit court abused its discretion in striking appellants' answers on the issue of punitive damages. We have jurisdiction to hear the first question pursuant to Rule 2(a)(4) of the Arkansas Rules of Appellate Procedure—Civil, which provides that "[a]n order which strikes out an answer, or any part of an answer, or any pleading in an action" is an appealable order. *See also Dodge v. Lee,* 350 Ark. 480, 88 S.W.3d 843 (2002). Regarding the second question, appellants argue that the circuit court's actions toward them and their counsel reveal a strong appearance of bias, which necessitated the filing of a motion to recuse. Rule 2, however, does not authorize an interlocutory appeal from the denial of a motion to recuse. Ark. R.App. P.-Civ. 2(a); *see also, Manila School Dist. No. 15 v. Wagner,* 357 Ark. 20, 159 S.W.3d 285 (2004). Thus, we lack jurisdiction to hear an appeal of this issue at this time.

The third question regards appellants' assertion that the circuit court struck their answers on the issue of punitive damages. The order appealed from struck appellants' answers to the complaint's allegations of recklessness. Recklessness is conduct from which a jury is permitted, but is not required, to impose punitive damages. *See HCA Health Servs.*

*of Midwest Inc. v. Nat'l Bank of Commerce,* 294 Ark. 525, 745 S.W.2d 120 (1988). Striking appellants' answers regarding recklessness is not a default on the issue of punitive damages. Thus, as the circuit court did not strike appellants' answers on the issue of punitive damages, that issue is not properly before this court.

## II. *Standard of Review*

Under Arkansas Rule of Civil Procedure 37, if a party fails to comply with an order compelling discovery, the court "may make such orders in regard to the failure as are just," and may enter "an order striking out pleadings or parts thereof." Ark. R. Civ. P. 37(b)(2)(C) (2011). The imposition of sanctions for the failure to make discovery rests in the trial court's discretion. *Nat'l Front Page, LLC v. State,* 350 Ark. 286, 86 S.W.3d 848 (2002). We have upheld a trial court's exercise of discretion in granting severe Rule 37 sanctions for flagrant discovery violations. *See, e.g., Viking Ins. Co. of Wis. v. Jester,* 310 Ark. 317, 836 S.W.2d 371 (1992). A trial court abuses its discretion when it makes a decision that is arbitrary or capricious. *Phelan v. Discover Bank,* 361 Ark. 138, 205 S.W.3d 145 (2005). Also, discretion exercised thoughtlessly and without due consideration evidences abuse. *Poff v. Brown,* 374 Ark. 453, 288 S.W.3d 620 (2008). However, "[t]here is no requirement under Rule 37, or any of our rules of civil procedure, that the trial court make a finding of willful or deliberate disregard under the circumstances before sanctions may be imposed for the failure to comply with the discovery requirements." *Calandro v. Parkerson,* 333 Ark. 603, 608, 970 S.W.2d 796, 799 (1998). Sanctions, including the striking of pleadings, may be imposed for discovery violations under Rule 37(d), even though no prior order to compel has been entered.

*Cook v. Wills,* 305 Ark. 442, 808 S.W.2d 758 (1991). Moreover, it is crucial to our judicial system that trial courts retain the discretion to control their dockets, and imposition of discovery sanctions is one method to facilitate that function. *Rush v. Fieldcrest Cannon, Inc.,* 326 Ark. 849, 934 S.W.2d 512 (1996).

## III. *Arguments*

Appellants advance several arguments that the circuit court abused its discretion in striking part of their answers that fall into two categories: (1) evidence of discovery violations; and (2) the scope of the sanction. In the order, the circuit court noted that appellants failed to timely identify witnesses, produce payroll records reflecting the hours worked by staff, and produce the emails. Appellants challenge all three factors on appeal, although they contend that the most significant factor is the one regarding the emails. Thus, we begin our review with that issue.

### A. Discovery Violations

■ Appellants argue that the circuit court abused its discretion in using email production as a basis for imposition of sanctions because the uncontroverted evidence was that email production was impossible given the time constraints of the order. However, appellants' response to the email request did not assert that producing the emails was impossible, but that production was overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. The reason for an objection to a request for production must be stated. Ark. R. Civ. P. 34(b)(2).

Appellants first advanced their impossibility argument to the circuit court after the motion for sanctions was filed on August 30, 2010. After the telephone conference on September 13, 2010, appellants filed a response to the motion for discovery sanctions on September 14, 2010, and asserted that it was impossible to comply with the court's order compelling discovery on emails based on information in Belke's September 13, 2010 affidavit. However, contrary to appellants' assertions, that affidavit only established that producing the emails was time-consuming and expensive. Subsequently, in their motion for reconsideration filed on November 9, 2010, appellants submitted another affidavit from Belke stating for the first time that "it was not possible to provide recovery services for two month's worth of daily email backups (i.e. 62 days) within a 14 day time frame." By the time this affidavit was filed almost four months had passed since the circuit court had ordered the emails produced.

■ Appellants also argue that they were sanctioned for discovery violations despite their good-faith attempts. The circuit court determined that appellants failed to present evidence regarding their asserted good-faith efforts to comply with discovery. The order appealed from specifically details the opportunities afforded appellants to either comply with the email request or to furnish a basis upon which the court could determine that they were trying to comply with the request. The circuit court found that appellants failed to produce the emails in response to the discovery request, failed to produce the emails when ordered by the court, failed to timely notify the court of compliance problems, failed to furnish sufficient information of their good-faith efforts, and failed to furnish information regarding when compliance could be expected. This court gives due deference to a trial judge who is in a superior position to judge the actions or motives of the litigants, and we will not second-guess its ruling. *Calandro v. Parkerson, supra.* We cannot say that the

circuit court abused its discretion in finding appellants' failure to produce emails merited imposing discovery sanctions.

Appellants also challenge the two additional grounds supporting the decision to impose sanctions: (1) failure to timely disclose witnesses; and (2) failure to timely produce records showing the actual hours worked by staff. The circuit court found that appellants' failure to timely disclose witnesses and produce staffing records was an obstruction of routine discovery requests, deliberately jeopardizing the trial setting. Because we find that appellants' failure to comply with discovery requests and orders regarding emails was sufficient to impose discovery sanctions, we need not address these arguments.

### B. Scope of Sanctions

#### 1. *Santarsiero*

Next, appellants argue that striking part of the answer of Santarsiero in his individual capacity was an abuse of discretion because even assuming some sanction was appropriate, it should have been limited to Perennial Health Care or Lake Village Healthcare. They contend that the mere fact that Santarsiero owns more than a ninety-percent share of Perennial Health Care is an insufficient basis to impose the severest sanction possible on him, especially as he was not the owner of the emails.

Rule 33(b) provides that a party who has been served with interrogatories shall serve a copy of answers or objections within thirty days after service of the interrogatories. Ark. R. Civ. P. 33(b)(3). All grounds for an objection to an interrogatory shall be stated with specificity, and any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown. Ark. R. Civ. P. 33(b)(4). Here, Santarsiero and Perennial Health Care filed a joint response to appellee's discovery requests. Regarding the emails, Santarsiero stated, "See response of Lake Village Healthcare."

There were three hearings before the circuit court on the issue of appellants' failure to comply with discovery requests, and Santarsiero was represented by counsel at all of those hearings. At none of those hearings, prior to the ruling striking part of his answer, did Santarsiero advance that he should not be required to respond to any discovery requests because of the capacity in which he was sued. Furthermore, the circuit court specifically stated that one of the problems with this case was appellants' failure to raise their objections to discovery in the form required by the Arkansas Rules of Civil Procedure. Instead, appellants raised arguments as to why they had not or could not comply with discovery requests or the court's orders *after* their noncompliance necessitated multiple hearings. Arkansas Rules of Civil Procedure 33(b) and 34(b)(2) provide that objections to interrogatories and requests for production must be specific and timely. Because Santarsiero failed to raise a timely objection to discovery requests on the basis he now seeks relief, we find no abuse of discretion in the circuit court's sanction.

#### 2. *Claims*

Appellants next argue that the circuit court abused its discretion in striking part of their answers regarding the Residents' Rights Statute as to Perennial Health Care and Santarsiero. Specifically, they cite to *Health Facilities Management Corp. v. Hughes,* 365 Ark. 237, 227 S.W.3d 910 (2006), wherein we held that a claim under the Residents' Rights Statute, codified at Arkansas Code Annotated section 20–10–1201 et seq., can only be maintained against the licensee. In this case, the licensee is Lake Village Healthcare.

We disagree with appellants' interpretation of the circuit court's order. The order struck part of appellants' answers "to [appellee's] fault allegations on common law negligence and resident rights." The order then requires appellee's counsel to prepare a "default judgment on the issue of liability" that "should reflect naturally the proper [appellant] to whom those two separate counts apply." Because appellants' allegation of error is not supported in the record, this argument presents no basis for reversal.

Affirmed.

HANNAH, C.J., and CORBIN, DANIELSON, and GOODSON, JJ., concur.

JIM HANNAH, Chief Justice, concurring.

I concur in the conclusion reached by the majority; however, I write separately to state my analysis regarding the email dispute. My concern is that we are leaving the impression that striking an answer is a common sanction for discovery violations. It is not. "The extraordinary remedy of striking pleadings should be used 'sparingly and only when other measures fail because of the inherent danger of prejudice.'" *Ross Sys., Inc. v. Advanced Envtl. Recycling Techs., Inc.*, 2011 Ark. 473, at 5, 2011 WL 5437571 (quoting *Harper v. Wheatley Implement Co.*, 278 Ark. 27, 33, 643 S.W.2d 537, 539 (1982)).

Appellants were ordered to produce the December 2006 and January 2007 emails by July 28, 2010, but they did not do so. They further failed to produce the emails in the three months that followed despite a threat by the court to strike answers.[1] Defendants had the option of complying with the order or obtaining relief from compliance with the order. They did

The circuit court did not immediately strike the answers; rather, it let time pass from July 28, 2010 to October 15, 2010. Based on the circuit court's comments, it appears that even after July 28, 2010, appellants could have avoided the sanction if they had complied with the order or obtained relief from compliance with its terms. I note that appellants argued in court at the hearing on the motion to compel and in the subsequent telephone conferences that production was expensive or impossible, but they but did not obtain relief from the order that the emails be produced.[2] When asked by the circuit court on October 15, 2010, whether the required emails had been produced, appellants responded, "No, your honor." Almost three months after the July 28, 2010 production date, the circuit court imposed the sanction. Ignoring an order of the circuit court may result in imposition "of the most severe sanctions." *See Viking Ins. Co. v. Jester*, 310 Ark. 317, 326, 836 S.W.2d 371, 376 (1992) (circuit court struck Viking's answer for violation of an order that it produce its entire claim file). Given

1. The emails were sought pursuant to Request For Production No. 26, which requested "all emails, electronic reports, electronic communications, electronic media, and documents concerning budget, staffing, labor and supplies related to Lake Village Health Care for the year 2007."

2. I note that the order entered on August 4, 2010, ostensibly memorialized the July 14, 2010 order from the bench that emails from December 2006 and January 2007 be produced by July 28, 2010; however, it was in error. It inaccurately required production of emails for all of 2007. The order was drafted by the Estate's counsel. Appellants sent a letter to the circuit court objecting to the order based on the noted error but never obtained relief from the order. In subsequent hearings, the circuit court required that only the emails from December 2006 and January 2007 be produced.

the appellants' blatant disregard for the orders of the circuit court, the striking of pleadings was justified in this case. Therefore, I concur in the majority's conclusion that there was no abuse of discretion.

PAUL E. DANIELSON, Justice, concurring.

I concur with the majority and write solely to make a few observations. While Lake Village, Perennial, and Santarsiero argue that the circuit court erred in finding discovery violations relating to the identification of witnesses and staffing documentation, their argument is not well taken because, in my opinion, their failure to turn over the emails requested in and of itself warranted the discovery sanctions imposed by the circuit court. Here, the defendants were given multiple chances to comply with the request for emails and the circuit court's order compelling production, and until the date the circuit court struck their answers, *never* produced a single email as requested and ordered. All the defendants did to dispute production was complain that the task would be time-consuming and expensive. In their motion for reconsideration and on appeal, Lake Village, Perennial, and Santarsiero argue that the circuit court's order was impossible with which to comply. However, a review of the affidavits and arguments made to the circuit court reveal no such impossibility—to the contrary, they show it might

have been costly, burdensome, time-consuming, and difficult, but they in no way demonstrated that it was impossible to turn over the emails requested.[1]

Lake Village, Perennial, and Santarsiero also make much of the fact that they were "confused" by the circuit court's oral order to produce two months' worth of emails and its ultimate order directing one year's production. Yet, the defendants failed to produce even one email at all; moreover, they never even sought an extension of time with which to comply with the circuit court's order to compel, nor did they provide any affidavits to the circuit court demonstrating or outlining their attempts to fully comply with the circuit court's order outside of making a request to VCPI. Instead, the defendants, in essence, ignored the circuit court's order and took their chances.

A circuit court is in a superior position to judge the actions and motives of the parties, and this court should not second guess the circuit court in the instant case. *See National Front Page, LLC v. State,* 350 Ark. 286, 86 S.W.3d 848 (2002); *Calandro v. Parkerson,* 333 Ark. 603, 970 S.W.2d 796 (1998). The defendants flagrantly failed to comply with the Estate's request for production, despite being given multiple opportunities to do so or to demonstrate why they could not. A court commits an abuse of discretion when it improvidently exercises its discretion, for example, when discretion is exercised

---

1. This is further evidenced by the defendants' turning over of the emails from other litigation—it was clearly possible to obtain the emails requested, albeit perhaps difficult. It was not, however, impossible. The defendants also seem to make much a of the federal district court's decision in *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309 (S.D.N.Y.2003), which they cited both to the circuit court and this court. In *Zubulake,* the district court did discuss the difficulties relating to electronic data on backup tapes, but it in no way held that such information was impossible to obtain or produce. And, as already noted, the defendants were able to produce such information in other litigation. In my opinion, the mere difficulty in obtaining the information did not excuse the defendants' flagrant noncompliance in the instant case.

thoughtlessly and without due consideration. *See Ross Sys., Inc. v. Advanced Envtl. Recycling Techs., Inc.*, 2011 Ark. 473, 2011 WL 5437571. The circuit court in this case did not improvidently exercise its discretion. Because it did not do so, I too would affirm the circuit court's order striking the answer of the defendants to the claims of negligence and violation of the Arkansas Resident's Rights Act.[2]

|₁₇CORBIN and GOODSON, JJ., join.

2. Like the majority, I would not address the issues raised by Lake Village, Perennial, and Santarsiero relating to recusal and punitive damages, as we have held that an appeal from an order striking an answer is accepted only to address those matters that are related to the striking of the answer; therefore, this court will not address issues that do not procedurally come within the purview of this type of interlocutory appeal. *See Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (1994) (declining to address the Williams' last assertion of error that the matter should be transferred to circuit court). I too would affirm the striking of Santarsiero's answer.

Contrary to the claims of the Estate, the issue is preserved for this court's review in light of the arguments made to the circuit court on September 13, 2010. While the emails requested were presumably the property of Lake Village and Perennial, Santarsiero was allegedly a controlling member of both entities. The emails were being sought by the Estate to prove that Santarsiero, in his individual capacity, controlled both Lake Village and Perennial, such that his negligence could be demonstrated. With such facts before the circuit court, I simply cannot say that the circuit court abused its discretion in applying the sanction of striking to Santarsiero as well.