

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–17–58

|  |  |
|---|---|
| RUSSELLVILLE HOLDINGS, LLC, D/B/A SAINT MARY'S REGIONAL MEDICAL CENTER D/B/A TURNING POINT BEHAVIORAL HEALTH <br><br> APPELLANT <br><br> V. <br><br> JAMES ROBERTSON PETERS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOHN D. PETERS, JR., DECEASED, AND ON BEHALF OF THE ESTATE AND ITS STATUTORY BENEFICIARIES; JOHN D. PETERS III; JAMES ROBERTSON PETERS, INDIVIDUALLY; AND KATHLEEN STINGLEY <br><br> APPELLEES | **Opinion Delivered:** October 25, 2017 <br><br> APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-15-160] <br><br> HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE <br><br> AFFIRMED |

## MIKE MURPHY, Judge

This medical-malpractice case stems from the death of John D. Peters, Jr. ("Mr. Peters"), who was admitted to appellant Turning Point Behavioral Health ("Turning Point"), a unit located at Saint Mary's Regional Medical Center ("St. Mary's"), and upon his release, hanged himself ten days later. Appellee James Robertson Peters, as personal representative of the estate, initiated suit. We affirm.

## I.    *Facts and Procedural History*

Mr. Peters was admitted to Turning Point following the death of his wife of 37 years and two resulting suicide attempts. Mr. Peters had long suffered from bipolar disorder with periods of severe anxiety. His second suicide attempt occurred on December 10, 2013, and resulted in an emergency-room visit to St. Mary's. The inquiry and assessment form that was filled out in the emergency room recognized that Mr. Peters's son, John D. Peters III ("Jay"), was Mr. Peters's legal guardian. Notably, both Mr. Peters and Jay signed the consent for voluntary admission on December 10, 2013. On December 13, 2013, a social worker from Turning Point filed a petition to involuntarily admit a person with mental illness, which the Pope County Circuit Court granted on December 16, 2013. Nothing in the petition acknowledged that Mr. Peters had a legal guardian.

On December 26, 2013, Mr. Peters was discharged from Turning Point on his own recognizance. The discharge summary revealed that Mr. Peters denied further suicidal ideations; he had engaged in no self-destructive behavior since admission and seemed ready for discharge; he was future oriented and had interacted very positively with staff and peers; and it was felt that he had reached maximal benefit of hospitalization.[1] On January 6, 2014, Mr. Peters hanged himself.

Four days after the death of Mr. Peters, appellees' (Mr. Peters's estate and heirs) attorney sent a seven-page letter to appellant with the heading "Important Notice Regarding Document and Data Preservation." This broad letter gave appellant notice that the heirs and estate of Mr. Peters had retained legal counsel to investigate a potential

---

[1]The discharge summary report was dictated six days after Mr. Peters's death.

claim, and appellant was notified "not to destroy, conceal or alter any paper or electronic files . . . ." At that time, medical records of discharged patients were kept in two places: (1) copies of the paper portion of the records were scanned to Laserfiche by a third-party vendor and then shredded and (2) the electronic portion of the medical records was maintained on a computer program known as MediTech.

After receipt of the letter, Tim Copeland, chief quality officer of Russellville Holdings, LLC (another name for appellant) told the director of the health-information-management department, Paula Page, to sequester the paper portion of Mr. Peters's records. Subsequently, Turning Point retained legal counsel. Turning Point responded to the letter on February 7, 2014, requesting a meet-and-confer conference to discuss the breadth and scope of the document-preservation letter. Turning Point sent a follow-up request on February 14, 2014, because counsel had not responded. A few days later, the attorneys conducted a telephone conference, and appellees' attorney sent a follow-up one-page letter narrowing down the preservation request.

Around the same time, but before the telephone conference occurred, Annette Smith replaced Paula Page as health-information-management director. In an affidavit, Smith explained that she had not been provided a copy of the letter that the hospital received regarding document and data preservation. She said at some point between late January but before February 10, 2014, she discovered, in a drawer of a desk previously used by Paula Page, Mr. Peters's paper medical records. She explained, as in the ordinary course of business, that she took the complete paper portion to EDCO Health Information Solutions, the third-party vendor that scans medical records into Laserfiche,

to be scanned. Smith received the paper medical records back once they had been scanned. At some point between February 10, 2014, and February 9, 2015, the paper portion of the records was shredded in the usual and ordinary course of business; she explained that this was not done maliciously or to destroy evidence. From her point of view, "a superior copy of the paper records existed on Laserfiche at the time the paper portion was shredded."

Appellees eventually filed suit on May 6, 2015. Prior to, and during the course of, litigation, four different sets of the medical records were produced, for various reasons that were set out in the affidavit by Smith. In February 2015, after the contents of the medical records had changed four times, counsel for appellees made a demand for a physical inspection of Mr. Peters's original medical chart. Of particular importance, appellees sought to document the actual content of the original physical chart as it was on the day of Mr. Peters's discharge and whether the original chart contained guardianship orders that appellees claimed they had provided to Turning Point, but Turning Point claimed the contrary. It was then that the hospital and the appellees discovered that the original paper medical chart had likely been destroyed by Saint Mary's.

As a result, appellees filed a motion to compel their access to Mr. Peters's original chart or, in the alternative, to force Saint Mary's to admit on the record that they had intentionally destroyed the original chart. In response, appellant stated that it could not permit inspection of the original chart because it had been destroyed. Appellees filed a motion to strike appellant's answer, arguing that their ability to obtain a full and fair trial had been irretrievably compromised as a result of the evidentiary destruction of the

medical records. After a hearing on the motion, the circuit court found that, after careful consideration, the original medical file in question was so important to the case that its preservation was essential to a just adjudication. In its order, the court recognized that striking an answer is very serious, but it found appellant's conduct to be most egregious. Appellant filed a motion to reconsider, but the circuit court denied appellant's motion after a hearing. Appellant timely appealed, and we have jurisdiction per Ark. R. App. P. – Civ. 2(a)(4), which states that an appeal may be taken from an order that strikes an answer. In *Arnold Fireworks Display, Inc. v. Schmidt*, 307 Ark. 316, 319, 820 S.W.2d 444, 445 (1991), the supreme court explained that the general purpose of Ark. R. App. P. –Civ. 2(a)(1) (an appeal may be taken from a final judgment or decree) is to prevent piecemeal appeals while portions of the litigation remain unresolved but that, quite differently, Ark. R. App. P. –Civ. 2(a)(4) allows a piecemeal approach.

On appeal, appellant argues three points: (1) the court erred as a matter of law in finding that spoliation of evidence occurred; (2) the court erred as a matter of law in finding that appellees' letters, sent long before any suit was filed, unilaterally imposed a duty to preserve the paper copy of the paper portion of the record; and (3) the court erred in imposing the extraordinary sanction of striking the answer.

II.   *Spoliation of Evidence*

On appeal from a circuit court's determination of a purely legal issue, we must decide only if its interpretation of the law was correct, as we give no deference to the circuit court's conclusion on a question of law. *Kraft v. Limestone Partners, LLC*, 2017 Ark. App. 315, at 5, 522 S.W.3d 150, 153. When a case is tried by a circuit court sitting

SLIP OPINION

without a jury, the inquiry on appeal is whether the circuit court's fact-findings are clearly erroneous, or clearly against the preponderance of the evidence. *Rial v. Boykin*, 95 Ark. App. 404, 408, 237 S.W.3d 489, 492 (2006). Recognition must be given to the circuit court's superior opportunity to determine credibility of witnesses and the weight to be given to their testimony. *Id.*

Our supreme court has defined "spoliation" as "the intentional destruction of evidence and when it is established, [the] fact finder may draw [an] inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation." *Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 146, 27 S.W.3d 387, 388 (2000). However, we must begin our analysis by acknowledging that Arkansas case law on spoliation is sparse. For example, this court has not previously addressed whether spoliation of medical documents occurs when the documents are scanned and converted to another format. The spoliation cases in Arkansas involve tangible evidence, such as a halogen lamp and a water–pipe clamp and bolt. *See Bunn Builders, Inc. v. Womack*, 2011 Ark. 231; *see also Rodgers v. CWR Constr., Inc.*, 343 Ark. 126, 33 S.W.3d 506 (2000).

Our supreme court held that a circuit court is not required to make a specific finding of bad faith on the part of the spoliator. *Bunn Builders, supra.* Unlike the case at hand, the plaintiffs in *Bunn Builders* sought to implement jury instructions on spoliation rather than striking the answer. *Bunn Builders*, 2011 Ark. 231, at 2. Regardless, it serves as guidance in our analysis on whether spoliation actually occurred. In *Bunn Builders*, the circuit court found that the parties had a duty and an agreement to preserve the evidence in the case but that the motive behind the destruction of evidence was unclear and granted

that the jury be instructed on spoliation. *Id.* The appellants appealed, arguing that the circuit court erred in instructing the jury on spoliation because there was no initial finding by the court that the destruction was done in bad faith. *Id.* The supreme court explained that Arkansas courts have never specifically held that a circuit court must find intentional destruction indicating a desire to suppress the truth before a spoliation instruction can be given. *Id.* at 10. Therefore, the supreme court concluded that a finding of bad faith on behalf of the spoliator is not necessary. *Id.* at 11.

The court in *Bunn Builders* relied on *Rodgers* for guidance. Rodgers was injured in a construction-site accident when a section of water pipe that was suspended from the ceiling fell and struck him as he was pulling feeder wires out of an electrical panel in the basement of the Pulaski County Courthouse. *Rodgers*, *supra*. The parties stipulated that the appellee, the contractor, had lost the clamp and bolt that held the water pipe to the ceiling before the accident occurred, and the appellants requested a spoliation instruction. *Rodgers*, 343 Ark. at 129, 33 S.W.3d at 508. The circuit court rejected a non-AMI jury instruction propounded by the appellants, noting that the clamp and bolt were available at the time the appellants' lawsuit was initiated and that the appellants had presented no proof that the contractor willfully lost or intentionally destroyed the evidence. *Id.*

On appeal in *Rodgers*, the appellants argued that the record reflected that the contractor had been in physical possession and control of the pipe, clamp, and bolt involved in the accident. *Rodgers*, 343 Ark. at 130, 33 S.W.3d at 510–11. The supreme court affirmed the circuit court's decision to reject appellants' spoliation instructions because (1) the circuit court specifically found that the evidence had not been

intentionally lost or destroyed; (2) the circuit court had permitted counsel to argue the same points even though the instructions were not submitted to the jury; and (3) the evidence was available shortly after the accident, but no meaningful discovery was commenced until five years following the accident. *Id.* The supreme court held that "[i]n absence of any intentional misconduct, we cannot say that the circuit court abused its discretion by failing to give the jury an instruction on spoliation of evidence." *Id.* One notable difference in *Rodgers* is that the case had been initiated, yet discovery was not conducted until five years later. Here, the case had not yet been initiated when the evidence was considered destroyed.

Appellant first argues that spoliation of the medical records did not occur because the paper portion of Mr. Peters's medical records was not shredded until after the entire paper portion of the record had been scanned to Laserfiche. However, it is important to appellees that they should have had an opportunity to inspect the physical paper chart as it existed when Mr. Peters was discharged, as appellees contend that Mr. Peters was not adequately assessed by the treating physician, Dr. Stinnett. Additionally, it is important to appellees to know whether copies of the guardianship orders were in the paper file to show that appellant wrongfully discharged Mr. Peters without consulting his guardian. Appellant explained that it is its policy to recognize guardianship orders only if they are located in the patient's medical chart. Appellant further contends that the electronic version of the record did not contain a guardianship order, so it must not have been in the record because the electronic copy is an exact replica. On the contrary, appellees argue that having the opportunity to inspect the actual chart, as it existed at the time of

discharge, could reflect otherwise. Appellees assert that a genuine dispute as to the actual content of the medical record on the day of discharge exists and that the only way to resolve this issue is to examine the original. We agree and decline to accept appellant's logic that a duplicate of the evidence was made before it was destroyed.

It is appellees' burden to prove that Mr. Peters was wrongfully discharged, and to do so appellees need to know what the discharge notes revealed the day of Mr. Peters's release and whether Dr. Stinnett wrongfully released his patient on his own recognizance, because a guardianship order existed in the file. It is well established that we require the fact-finder to base its decision on proof, and not mere speculation or conjecture. *Rodgers*, 343 Ark. at 131, 33 S.W.3d at 509–10. Here, the parties and the fact-finder would be required to speculate as to what was in the stack of documents and what was actually in front of the caregivers when the decision to discharge Mr. Peters was made. Moreover, for our analysis, the manner in which appellant destroyed the records is irrelevant because, as determined in *Bunn Builders*, a finding of bad faith is not necessary.

We distinguish the situation at hand from one in which the letter to preserve the records came after the files had been converted to an electronic format. Here, we find it notable that appellees sent a letter to preserve the documents before they were destroyed and converted into an electronic format. As in *Rodgers*, the evidence was available following the death of Mr. Peters, but unlike *Rodgers*, meaningful discovery had commenced, yet destruction of the evidence still occurred. For these reasons, we must affirm on this point.

III. *Duty to Preserve*

Other courts have held that whether a duty to preserve evidence exists is a question of law for the court. *Cockerline v. Menendez*, 988 A.2d 575, 589 (N.J. Super. Ct. App. Div. 2010). This court does not defer to the circuit court on a question of law. *Clark v. Caughron*, 2017 Ark. App. 409, at 2, ___ S.W.3d ___, ___. We review the issue de novo, as on review of any question of law, and simply apply the applicable law. *Muhammad v. State*, 67 Ark. App. 262, 998 S.W.2d 763 (1999).

Under Ark. R. Civ. P. 37(b)(2), a party risks sanctions if he or she destroys documents or other evidence after the court has issued an order compelling discovery or a protective order, for destruction constitutes an obvious failure to comply with the order. However, the rule does not expressly address the destruction of relevant documents before litigation has commenced or after a complaint has been filed but before the documents are sought via discovery. 2 David Newbern, John J. Watkins, D.P. Marshall Jr. & Brandon J. Harrison, *Arkansas Civil Practice & Procedure* § 21:16 (5th ed. 2017). In Arkansas, the standard is very clear in criminal cases that the State's duty to preserve evidence is limited to that which "might be expected to play a significant role in the suspect's defense" and that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Lee v. State*, 327 Ark. 692, 700, 942 S.W.2d 231, 235 (1997). However, the duty is not so clear in civil cases.

Courts in other jurisdictions have held that a party has an obligation to preserve relevant evidence upon receiving notice of being sued and when he or she should know

10

 

that it may be relevant to future litigation. Newbern et al., *supra*. Further, § 21:16 explains,

> The scope of the duty to preserve evidence "is not boundless," and a potential litigant "need do only what is reasonable under the circumstances." Likewise, the duty to preserve evidence does not extend to every document in one's possession, for such a responsibility would "cripple large corporations . . . that are almost always involved in litigation." As one U.S. District Judge has observed, "to hold that a corporation is under a duty to preserve all e-mail potentially relevant to any future litigation would be tantamount to holding that the corporation must preserve all e-mail," a result that would be "especially burdensome where the e-mail system [is] used primarily for routine communication.

(Citations omitted.)

However, the Eighth Circuit has acknowledged it is less willing to let corporations hide behind their retention policies. The Eighth Circuit in *Lewy v. Remington Arms Co.* concluded that "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." 836 F.2d 1104, 1112 (8th Cir. 1988). The *Lewy* court admonished the defendant for negligently failing to preserve the evidence requested and suggested that a court should consider whether the record retention policy is "reasonable considering the facts and circumstances surrounding the relevant documents." *Id*. The Eighth Circuit elaborated in *Morris v. Union Pacific Railroad*, 373 F.3d 896 (8th Cir. 2004), to also look at the intention of the company destroying evidence.

Here, appellees argue that a similar standard in criminal cases should apply in civil cases; they argue that appellant was under a duty to preserve all items that "might be material" to a potential claim. Appellees assert that it was reasonably foreseeable that the original paper chart might be material to that potential claim. We agree.

We rely on *Bunn Builders*, *supra*, for insight into our policy. There, painters were painting a building late at night, and after they had left, a fire destroyed the building. Days later, the owners of the building and the insurance company (the plaintiffs) retained certain items for preservation and testing, including a halogen lamp that had been left by the painters. Before filing suit, the painters' insurance company (the defendant) sent a letter requesting that it be informed prior to, and present for, any examination or inspection of those items. The plaintiffs sent a letter to defendant claiming that the investigation was a result of the painters' negligence. Thereafter, the lamp was authorized to be destroyed without inspection or testing by the defendant. The supreme court affirmed the circuit court's finding that the parties had a duty and an agreement to preserve the evidence in the case; the court therefore granted their request for a spoliation instruction.

Similarly, it is undeniable that appellant was on notice of a potential suit. Appellant was put on notice long before litigation commenced that it was to preserve "original dictation related to the intake, discharge, or care of Mr. Peters, whether maintained in digital, cassette tape format or otherwise." Moreover, appellant acknowledged the request and originally sequestered the paper records. On appeal, appellant asserts that it was in compliance with the obligations under Arkansas law regarding the retention and preservation of medical records. However, that is not sufficient because not only was it reasonably foreseeable that the original medical records would be material to a potential claim, but also because the paper records existed at the time the letter was sent, and appellant agreed to retain them. It was not unduly burdensome for appellant to maintain

the paper records. Unlike the example of the burdensome requirement that a corporation to preserve all e-mail correspondence, appellant was not required to keep all the patients' paper records, just Mr. Peters's. For the foregoing reasons, we find that a duty attached.

### IV. *Sanction of Striking an Answer*

The imposition of sanctions rests in the circuit court's discretion. *Ramsey v. Dodd*, 2015 Ark. App. 122, 456 S.W.3d 790. It is crucial to our judicial system that circuit courts retain the discretion to control their dockets and imposition of discovery sanctions. *Lake Village Health Care Ctr., LLC v. Hatchett*, 2012 Ark. 223, 407 S.W.3d 521. The circuit court is in a superior position to judge the actions and motives of the litigants, and the circuit court's rulings should not be second-guessed. *Id.* Accordingly, we review the imposition of sanctions, even severe ones, under an abuse-of-discretion standard. *Ramsey*, 2015 Ark. App. 122, at 4–5, 456 S.W.3d at 793. A court commits an abuse of discretion when it acts thoughtlessly, improvidently, or without due consideration. *Ocwen Loan Servicing, LLC v. Mickna*, 2017 Ark. App. 430, at 4.

Arkansas Rule of Civil Procedure 37(b)(2)(C) provides that if a party fails to obey an order to provide or permit discovery, the court in which the action is pending may make such orders in regard to the failure as are just, including an order striking out pleadings or rendering a judgment by default against the disobedient party. The Arkansas Supreme Court noted in *Goff* that the same sanctions available under the discovery rules are allowed as a spoliation sanction, which includes striking an answer of an offending party. 342 Ark. at 150, 27 S.W.3d at 391.

A review of the record reveals that the circuit court did not reach its decision without due consideration. The court conducted two hearings and directed thoughtful questions to both parties. In fact, the court admonished appellees' counsel for cutting off the court's questions and input. The circuit court chose to reject appellant's argument that the electronic copy was an exact replica and therefore considered an "original." In granting the motion to strike, the court acknowledged that striking the answer of a party is very serious but that the conduct was most egregious as evidenced by the fact that appellant was "clearly placed on notice not to destroy these critical documents," yet it proceeded to destroy the original file anyway. The circuit court further considered the alternative to instruct the jury on spoliation of evidence, but found that it would be insufficient given the importance of the factual dispute surrounding which documents were in the original file. We recognize that we have never addressed a case in which the sanction was to strike the entire answer, but the option to do so does exist. Because the circuit court clearly found that appellant willfully destroyed the paper medical records and that a curative instruction would be insufficient, we cannot say that the court abused its discretion by striking the answer.

Affirmed.

VIRDEN, J., agrees.

GLOVER, J., concurs.

**DAVID M. GLOVER, Judge, concurring.** I reluctantly affirm this case. Our standard of review on appeal for the imposition of sanctions is abuse of discretion, *Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003), which is an extremely high threshold to

overcome. To hold there was an abuse of discretion, it must be shown the trial court acted thoughtlessly and without due consideration. *Roberts v. Wortz*, 2017 Ark. App. 349, 525 S.W.3d 485. Here, the record reflects the in-depth hearing conducted by the trial court on the spoliation. Each party was questioned at length. Then, several weeks later, the trial court detailed by letter to the parties its decision. On such a record, I cannot say the trial court acted thoughtlessly and without due consideration. Through this concurrence, however, I express my grave concern for the breadth of the sanctions levied against appellant Russellville Holdings *stemming from destruction of the paper medical records*.

Spoliation is defined as "the intentional destruction of evidence and when it is established, [the] fact finder may draw [an] inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation." *Rodgers v. CWR Constr., Inc.*, 343 Ark. 126, 33 S.W.3d 506 (2000) (citing *Goff v. Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 146, 27 S.W.3d 387, 388 (2000) (citing Black's Law Dictionary 1401 (6th Ed. 1990))). Unlike a number of federal courts, Arkansas courts have never held that there must be a finding of bad faith by the trial court of intentional destruction indicating a desire to suppress the truth before a spoliation instruction can be given. *Bunn Builders, Inc., v. Womack*, 2011 Ark. 231.

The sanctions are many. In Arkansas, sanctions for a spoliation violation cover a wide range of options—from a fine, to orders providing that the facts in question are conclusively established or refusing to allow certain evidence or defenses to be admitted, to ordering the "striking [of] pleadings *or parts thereof*." *See* Arkansas R. Civ. P. 37(b)(2)(C) (emphasis added). AMI jury instruction 106 is also available. Though not chosen as a

sanction by the trial court, that instruction states that if a party intentionally destroys, loses, or suppresses evidence with the knowledge it may be material to a pending or potential claim, an inference may be drawn that such evidence would have been unfavorable to that party's claim or defense.

Here, the trial court struck Russellville Holdings' entire answer as the sanction for shredding the paper medical records. In its order, the trial court found the original medical file was "so important" that "its preservation was essential to a just adjudication of the issues," that a curative instruction was insufficient "given the importance of the factual dispute in this case surrounding what documents were in the original file," and that Russellville Holdings' conduct was "most egregious" so as to require the striking of its answer. It is stringent, clearly, but is a sanction approved under Ark. R. Civ. P. 37(b)(2).

There are two factual questions lifting this appeal. The first question centers around whether orders of temporary and permanent guardianship over Peters were present in his paper medical file on his discharge date of December 26, 2013. His children assert the orders were delivered to the hospital and requested to be placed in Peters's file.[2]

---

[2]Peters's counsel narrowed this question by his remarks to the trial court:

> [W]e are entitled to show what was in that original file in regards to the guardianship orders, and whether we could substantiate our clients' allegation that they provided those and they were in the file . . . .
>
> . . . .
>
> With regard to our case, we are entitled to try and prove, because it is at the heart of our case, that those guardianship orders were in that file on the day of discharge.
>
> . . . .

Russellville Holdings claims the orders were never received. Russellville Holdings offered other less drastic measures such as (i) giving the spoliation instruction; (ii) giving a modified version of the spoliation instruction, making the adverse inference to be drawn from the spoliation instruction an irrebuttable presumption as opposed to only a rebuttable one; or (iii) precluding Russellville Holdings' witnesses from testifying that the guardianship orders at issue were not delivered to it by appellees. As to the orders themselves, the latter two options would answer the question of whether they were in the file.[3] It would be undisputed the orders were received by Russellville Holdings. Later, Russellville Holdings' counsel's concessions of fact at the reconsideration hearing fully resolve the guardianship–identity issue:

> There's no dispute in this case that the proposed guardian was contacted by the hospital prior to Mr. Peters' discharge. There's no dispute in this case that he came to the hospital. He presented himself to the hospital as the guardian.

> There's no dispute that he met with the medical care providers. There's no dispute that he presented his contention that the patient should not be discharged or that other arrangements should be made. Those facts are in the pleading and I don't believe that there will be, there may be some back and forth argument, or could have been some back

---

> [I]t is our allegation in this case that the chart contained those guardianship orders.

[3]Applying the latter two options would have had the effect of Russellville Holdings admitting that it had received the orders. That in turn would have alleviated the main concern surrounding the destruction of the paper medical file.

and forth argument about the discussion that was had, but what will be presented is that the guardian was contacted.

He did come to the hospital the day of the discharge. He was advised of the patient's discharge.

The second factual question: whether the written discharge notes of another patient were placed in Peters's file instead of the written discharge notes for Peters. The trial court referenced only "the original medical file" in its order. However, by then, Russellville Holdings had submitted four similar, though not exact, microfiche copies of Peters's medical records. One version of Peters's medical records include another patient's notes. In a subsequent version, the other patient's medical notes had been removed and Peters's medical notes had replaced them. The paper medical notes were handwritten by separate defendant Dr. Thomas Stinnett, who discharged Peters.[4] Any other discharge notes could not be at issue, as Dr. Stinnett did not write them but dictated them January 14, over a

---

[4]Peters's counsel stated:

[The other thing] is his actual medical records from the day they let him go, which is the whole point of this case.

What is crucially important to prove that one way or another is what was in that file the day he left.

. . . .

What our lawsuit pertains to is what was in the file when that man walked out the door.

The treatment team's notes are what we are talking about from the day of discharge. Those are gone.

week after Peters committed suicide (January 6, 2014), and those notes were not transcribed until January 17. Thus, all discharge records were reported.

I repeat. In Arkansas, there does not have to be a bad intent to find spoliation of evidence. However, given the wide range of sanctions—from a jury instruction to the wholesale striking of an *entire* answer (which in effect amounts to a default judgment as to liability)—I believe when assessing a sanction, there must be consideration of how the evidence was spoliated as to each separate count. We have little to no appellate guidance regarding the imposition of sanctions for pre-litigation spoliation of evidence. The majority acknowledges Arkansas case law on any type of spoliation is sparse. Our rule (Ark. R. Civ. P. 37(b)(2)) contemplates a risk of sanctions for destruction of documents or other evidence after the court has issued an order compelling discovery. In this case, we concede the rule does not expressly address the destruction of relevant documents before litigation has commenced. With such a lack of direction, I am hopeful that our supreme court will be asked for review in order to give direction to the bench and bar for spoliation sanctions.

*Munson, Rowlett, Moore and Boone, P.A.*, by: *Beverly A. Rowlett*, *Timothy L. Boone*, and *Mary Carole Young*, for appellant.

*Streett Law Firm, P.A.*, by: *Alex G. Streett*, *James A. Streett*, and *Robert M. Veach*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.